513 A.2d 462

## OHIO CASUALTY GROUP OF INSURANCE COMPANIES

### v.

### Nicholas G. BAKARIC, Helen Bakaric and Nationwide Insurance Company.

### Appeal of Helen L. BAKARIC.

Superior Court of Pennsylvania.

Argued April 21, 1986.

Filed Aug. 1, 1986.

Petition for Allowance of Appeal Denied Jan. 15, 1987.

George A. Vaughn, Lemoyne, for appellant.

Craig A. Stone, Harrisburg, for Ohio, appellee.

William A. Addams, Carlisle, for Nationwide, appellee.

Before WICKERSHAM, BROSKY and WATKINS, JJ.

WICKERSHAM, Judge:

This is an appeal from the order of the Court of Common Pleas of Dauphin County, granting the petition of appellee Ohio Casualty Group of Insurance Companies ("Ohio Casualty") for a declaratory judgment.

As noted by the trial judge, the Honorable Herbert A. Schaffner, this case arises out of a "bizarre" factual scenario,[1] in which appellant, Helen L. Bakaric, was shot by appellee-husband, Nicholas G. Bakaric, during a quarrel

1. Appellee-husband suspected that appellant was being unfaithful to him so on the evening of June 12, 1981, he selected from his gun collection a Colt Python .357 revolver, loaded with hollow tip bullets. He also took a box of extra ammunition.

So armed, at approximately 9:00 p.m. on June 12, 1981, he concealed himself in the trunk of his wife's automobile in the parking lot of the restaurant where she was employed. Appellee-husband remained in the trunk, while appellant finished her work and drove with a girlfriend to get an early breakfast then returned the girlfriend to her home. He did not emerge until approximately 3:30 or 4:00 a.m., after appellant stopped the automobile on Route 114 in Mechanicsburg to investigate a noise in the trunk. He then confronted her with the loaded revolver in his right hand and accused her of being unfaithful to him.

During the argument that ensued, appellant attempted to run away, but appellee-husband caught her and jammed the muzzle of the revolver in her face under her chin. He then threatened her that if she didn't tell the truth, he would blow her head off.

Appellee-husband brought appellant back to the automobile and put her in the driver's side. He also got in the driver's side and began pushing her across the seat. He told her to move the "F" over and that if she didn't tell him the truth and take him to "Jimmy," he would blow her away. Appellee-husband was pushing appellant hard with his right hand which held the loaded revolver when the gun discharged and she was shot in the face.

*See* lower ct. op. at 2–4.

between the pair, while they were seated in appellant's parked automobile on June 13, 1981.

In April 1983, appellant filed an action against her husband for the injuries which she had received as a result of the shooting. Appellee-husband in turn responded by requesting insurance coverage and defense of the claim from both appellee Nationwide Insurance Company ("Nationwide"), under an automobile liability policy, and appellee Ohio Casualty, under a homeowners' policy. Appellee Ohio Casualty filed a petition for a declaratory judgment to determine whether it was required to provide coverage under the terms of the policy it issued to the Bakarics.

Following a two-day trial on this issue, the jury was requested to answer sixteen special interrogatories regarding the incident. After considering their answers, the court concluded that Ohio Casualty's homeowners' policy exclusion of injuries which were "intended or expected" [2] by the insured, precluded coverage of injuries resulting from the shooting incident since those injuries were intended or expected by appellee-husband. The court also determined that Nationwide's policy covering "damages resulting from the use of" the insured automobile did not extend to appellant's injuries since they did not result from or arise out of the parties' use of the automobile. The court entered a *decree nisi* to this effect, denying insurance coverage for appellee-husband in any civil action brought by appellant on either policy. Appellant's exceptions were dismissed and judgment was entered in accordance with the *decree nisi*. Appellant filed the instant appeal in which she presents the following four issues.

A. Did the trial court err in reaching its conclusion, on the basis of the facts as found by the jury, that the injury to Helen Bakaric was "expected from the standpoint of" Nicholas Bakaric?

**2.** The relevant clause provided: "This policy does not apply ... to bodily injury ... which is either expected or intended from the standpoint of the Insured." Homeowner's Policy, page 4 HO–3.

B. Do the facts as found by the jury preclude the conclusion reached by the trial court that the injury to Helen Bakaric was "expected from the standpoint of" Nicholas Bakaric?

C. Do the facts as found by the jury require the court to conclude that the injury to Helen Bakaric was not "expected from the standpoint of" Nicholas Bakaric?

D. Did the injury to Helen Bakaric result directly from the loading or use of the insured automobile and, as a result, qualify for coverage under Nationwide's Automobile Liability Policy?

Brief for Appellant at 3.

We recognize that our scope of review of a declaratory judgment proceeding is closely circumscribed. As this court stated in *Valley Forge Historical Society v. Washington Memorial Chapel*, 330 Pa.Super. 494, 501, 479 A.2d 1011, 1015 (1984):

> Our scope of review on appeal of a final decree is well settled. The factual conclusions of the Chancellor have the force of a jury verdict and will not be disturbed on appeal unless they are not supported by adequate evidence. *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228 (1978); *Nationwide Mutual Insurance Co. v. Walter*, 290 Pa.Super. 129, 434 A.2d 164 (1981). His findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on the witness stand. *See Fascione v. Fascione*, 272 Pa.Super. 530, 416 A.2d 1023 (1979). We will not reverse on appeal unless the trial court abused its discretion or committed an error of law. *Neshaminy Constructors v. Philadelphia et al.*, 303 Pa.Super. 420, 449 A.2d 1389 (1982) .... With these standards in mind, we review the evidence of record and the Chancellor's findings and conclusions to determine whether [appellant] alleges any valid basis for reversal.

■ We address appellant's first three issues as one, because we believe them to be in essence the same. In those issues, appellant alleges that the lower court erred in concluding that her injury was "expected" by her husband, on the basis of the jury's answer of "yes" to the question set forth below:

Do you find that Nicholas Bakaric should have expected harm to result to Helen Bakaric as a result of handling the gun?

N.T. at 139.

While we agree that the jury's answer does not establish that appellee-husband "expected" appellant's injury but only that he should have expected it, the verdict of the jury was not binding on the court. Pa.R.C.P. No. 1513 provides:

**Rule 1513. Trial by Jury. Advisory Verdict**

The court on its own motion or upon the petition of any party may submit to trial by jury any or all issues of fact. The trial by jury shall be given a preference on the trial list. The verdict of the jury shall be in the form of answers to specific questions *and shall not be binding upon the court.*

(Emphasis added). The lower court may make a proper determination based on the evidence irrespective of the form of the questions addressed to the jury or the jury's answers. In the instant case, the trial court concluded, based upon the evidence presented to it, that appellee-husband did expect harm to result to his wife, and that his wife's injuries were therefore not covered by Ohio Casualty's policy. While we might have come to a different conclusion then the trial judge, we cannot say that his findings were clearly wrong. Under the narrow standard of review articulated in *Valley Forge Historical Society, supra,* we can find neither abuse of discretion nor error of law which would justify our reversal on these grounds.

We turn to appellant's remaining issue in which she contends that her injury resulted directly from the loading or use of her automobile and was therefore covered under Nationwide's liability policy. She alleges that a causal

connection was established between the loading or unloading of the motor vehicle and the injury sustained here because appellee-husband was in the process of attempting to start the car when the revolver discharged.

A review of the relevant case law in this area reveals no precedent directly on point in this jurisdiction. In the related area of no-fault law, however, this court has consistently held that there is no coverage in such a situation. There must be a direct causal relationship between the injury and the automobile. *See Glad v. State Farm Mutual Automobile Insurance Co.*, 336 Pa.Super. 196, 485 A.2d 499 (1984); *Camacho v. Nationwide Insurance Co.*, 314 Pa.Super. 21, 460 A.2d 353 (1983); *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982); *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982).

In discussing the No-fault Act, our court has stated: "It is clear that this was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but is intended to cover motor vehicle accidents." *Camacho, supra* 314 Pa.Super. at 23–24, 460 A.2d at 354. Similarly, in the context of discussing the Uninsured Motorist Act, we have stated that "[a]utomobile insurance, including uninsured motorist provisions, are designed to compensate victims for vehicle-caused injuries." *Day v. State Farm Mutual Insurance Co.*, 261 Pa.Super. 216, 219, 396 A.2d 3, 5 (1979). It is evident from the above that there must be some connection between the harm done and the insured vehicle, in order to permit coverage under a written policy, as well as under the No-fault and Uninsured Motorist Acts, since those statutes were intended to provide the same coverage as that of liability insurance.

Moreover, the verbiage of Nationwide's automobile policy providing coverage for injuries, "resulting from the use" of the vehicle is not as broad as the term "arising out of the use" found in older policies. As we concluded in *Erie Insurance Exchange v. Eisenhuth, supra* 305 Pa.Super. at

575–76, 451 A.2d at 1026 (1982), although it might be argued that the victim might not have been shot but for his being in the vehicle, it was not that vehicle or its use that caused his injuries. Appellant argues that the injury occurred while appellee-husband was "loading" himself into the vehicle. It is therefore claimed that this action falls within the policy language affording coverage for injuries "resulting from the ownership, maintenance, use, loading or unloading" of the automobile.

We are not so persuaded. First, the quoted language is not found in the liability section of the policy but instead in the section providing first party benefits pursuant to section 103 of the No-fault Act. Thus, that language is not relevant here. *See D'Allessandro v. Durham Life Insurance Co.*, 503 Pa. 33, 467 A.2d 1303 (1983) (where the language of the policy is clear and unambiguous, it cannot be construed to mean other than the plain and ordinary meaning of its terms). Second, the jury found as a fact that the gun discharged as appellee-husband was pushing appellant, without stating any connection to his entering or loading the vehicle. Thus, even if the quoted language were to extend to determining general liability, it would not apply here since it is not clear in this instance that entering or loading the vehicle caused the injuries. *See Glad v. State Farm Mutual Automobile Insurance Co., supra.* Finally, appellant did not request a point for charge or special question for the jury concerning "loading" and thus this issue would appear to be waived.

■ We therefore conclude that any damages for which Nationwide would be liable should be confined to those "resulting from the use" of the automobile. With regard to this issue, we agree with the lower court which stated:

A lay person's consideration of this factual situation and the language of the policy would probably produce a conclusion that any damages awarded in a civil suit between the Bakarics would not result from the use of an automobile by them, but from the wanton use of a gun. We believe the proper legal conclusion should be the same. Giving the words of the insurance policy in ques-

tion the plain and ordinary meaning of its terms. *D'Allessandro, supra,* can we say that any damages Mr. Bakaric may have to pay as a result of the shooting in this case were "resulting from the ownership, maintenance, use, ... of your automobile..."? We do not think that we can. The basic function that courts perform in the consideration of a policy like this one, Nationwide's, is to ascertain the intention of the parties to the contract. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). We think that the parties here were contemplating insurance coverage for injuries caused by motor vehicles and not by large caliber revolvers. We think that, for the policy to pertain, there must be a causal connection between the use of the automobile and the injury sustained. *Day v. State Farm Insurance Company,* 261 Pa.Super. 216, 396 A.2d 3 (1979); *Erie Insurance Exchange v. Eisenhuth,* [305] Pa.Super. 571, 451 A.2d 1024 (1982). In this case we do not find such a connection.

Lower ct. op. at 8–9.

Therefore, finding all of appellant's issues to be without merit and concluding that there was otherwise neither abuse of discretion nor error of law, we affirm the order of the court below.