527 A.2d 1039

STATE AUTOMOBILE INSURANCE
ASSOCIATION, Appellant,

v.

Warren C. KUHFAHL and Dorothy Kuhfahl and St. Luke's Hospital, R.D. Hernandez, M.D., Ivan Perez, M.D., Jan E. Wemple, M.D., James L. Costan and Elizabeth Mae Costan, Benjamin Bidlack, a Minor by and Through Jerry Bidlack, His Parent and Natural Guardian, and Jerry Bidlack and Nancy Bidlack, Individually.

Superior Court of Pennsylvania.

Argued Feb. 24, 1987.

Filed June 19, 1987.

Michael Saltzburg, Philadelphia, for appellant.

William W. Matz, Jr., Bethlehem, for Kuhfahl, appellees.

Jerry A. Snyder, Allentown, for Bidlacks, appellees.

Before CIRILLO, President Judge, and TAMILIA and CERCONE, JJ.

CERCONE, Judge:

This declaratory judgment comes to us on appeal by the plaintiff, State Automobile Insurance Association (State Auto) from the lower court's denial of its motion for summary judgment and the question to be resolved is whether or not a certain accident comes within the terms of an automobile insurance policy which the appellees, the Kuhfahls had with State Auto at the time of the accident. State Auto sought a determination by the trial court that the facts and circumstances of the underlying incident infra, are such that the Kuhfahls, the insureds, are not entitled to a legal defense or liability insurance coverage from State Auto under the provisions of the insurance policy. The pertinent issue is whether or not injuries, sustained by a child, who after disembarking from the Kuhfahls' parked automobile and while proceeding across the street was struck by another vehicle, were causally connected with the use of the Kuhfahl automobile, thus triggering the participation of State Auto in the underlying lawsuit.

The lower court, in reviewing the depositions consisting solely of testimony of Mr. and Mrs. Kuhfahl, set forth the following facts in its opinion:

Defendants, Warren C. Kuhfahl and Dorothy Kuhfahl, used to transport Benjamin Bidlack home from Lincoln Elementary School, where Benjamin attended kindergarten and where Mrs. Kuhfahl works. On October 26, 1982, Mr. Kuhfahl drove his car to Lincoln School to pick up his wife and three children: Benjamin Bidlack, the Kuhfahl's grandson, Charles, and a neighbor, Jonah Levi. Mrs. Kuhfahl was seated in the front passenger seat of the vehicle, a two-door Ford Pinto. The three children

were seated in the back. Mr. Kuhfahl then proceeded home to Sycamore Street in Bethlehem, and parked his vehicle in front of his home. Mr. Kuhfahl stated on deposition that he pulled over to the curb and turned off the ignition. However, Mr. Kuhfahl did not get out of the car for the reason that after dropping off the children, the Kuhfahls intended to proceed to a gas station where Mrs. Kuhfahl's vehicle was being inspected. Mrs. Kuhfahl then exited the vehicle on her side in order to push her seat forward and let the children out. At this point, Benjamin Bidlack began to run across the street towards his home, whereupon Mr. Kuhfahl shouted "Wait Benji." However, Benjamin did not wait, and was struck and injured by an oncoming vehicle.

The Kuhfahls as we have said, supra, have been named as defendants in an action filed by the Bidlacks on behalf of their son. (The Bidlacks have also sued the owner and driver of the automobile that struck their son and also the doctors and hospital involved in this case.) This will be referred to as the underlying action in which the Kuhfahls ask State Auto to defend them.

As the learned court, Judge Richard D. Grifo, in setting forth the principles of law governing the granting or denying motions for summary judgment said:

Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there exists no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *Williams v. Pilgrim Life Insurance Co.*, 306 Pa.Super. 170, 452 A.2d 269 (1982). The moving party has the burden of proving that there is no material issue of fact, and the court must accept as true all well-pleaded facts in the light most favorable to the nonmoving party. *Nash v. Chemetron Corp.*, 246 Pa.Super. 595, 371 A.2d 992 (1977).

Here there is no dispute as to any substantiated fact. The issue in this case concerns the proper construction of the

Kuhfahls' State Auto insurance policy which is properly resolved by the court as a matter of law in a declaratory judgment proceeding. *Pa.P.U.C. Bar Assoc. v. Thornburgh,* 62 Pa.Commonwealth Ct. 88, 434 A.2d 1327 (1981). Granting or denying a petition for a declaratory judgment is a matter lying within the sound discretion of the lower court. *Greenberg v. Blumberg,* 416 Pa. 226, 228, 206 A.2d 16, 17 (1965). We find that the trial court did not abuse its discretion when it granted summary judgment in favor of appellees, the Kuhfahls,[1] on July 15, 1986.

In analyzing whether the insurer has a duty to defend, we must first look to the complaint filed against the insureds. *D'Auria v. Zurich Ins. Co.,* 352 Pa.Superior Ct. 231, 507 A.2d 857 (1986), and determine whether the insurer is required to defend. *Vale Chemical Company v. Hartford Accident and Indemnity,* 340 Pa.Superior Ct. 510, 490 A.2d 896 (1985), *reversed on other grounds,* 512 Pa. 290, 516 A.2d 684 (1986).

> After discerning the facts alleged in the complaint, we must then decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend. *Id.*

In *Cadwallader v. New Amsterdam Casualty Company,* 396 Pa. 582, 152 A.2d 484 (1959), our Supreme Court referred to this principle as explained by Judge Learned Hand in *Lee v. Aetna Casualty and Surety Company,* 178 F.2d 750 (2d Cir.1919). In *Lee,* an insured brought suit on a policy of liability insurance in two counts, seeking both relief from a judgment against the insured and costs in defense of the suit. Our Supreme Court in *Cadwallader* stated that the *Lee* Court found

> that the insurer was not obligated to pay the amount of the judgment recovered against the insured as the recovery was not one within the coverage of the policy. How-

---

**1.** The court granted summary judgment in favor of the Kuhfahls, although they did not file the motion. We deem the order appealed from as a denial of the motion for summary judgment which was filed by State Auto, and therefore, a denial of the petition for declaratory judgment.

ever, the Court went on to grant the insured his costs of defending that suit. The insurance policy in that case, as in this one, required the insurance company to defend only those claims covered by the policy. The court said, that so long as the complaint filed by the injured party covered an injury which "might or might not" fall within the coverage of the policy the insurance company was obliged to defend. In the course of the opinion they said "... the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defense. When, however, *as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it.*

. . . . .

"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, until it could confine the claim to a recovery that the policy did not cover ...". (Emphasis supplied).

*Cadwallader, supra* 396 Pa. at 589–90, 152 A.2d at 488. The Court in *Cadwallader* affirmed the judgment of the trial court which granted plaintiff the costs of defending an underlying malpractice suit against his insurance company which refused to defend him in a suit premised both on negligence and fraud. The former was covered in his policy, while the latter was excluded. The Court found the complaint to be sufficient to trigger a defense by the insurance company. Thus, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *Gedeon*

*v. State Farm Automobile Insurance Company,* 410 Pa. 55, 58, 188 A.2d 320, 321 (1963) in *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Superior Ct. 170, 392 A.2d 738 (1978).

In the instant case, the Bidlacks' Complaint against Dorothy Kuhfahl in the underlying action alleges negligence on her part consisting of, *inter alia:*

(a) Having voluntarily assumed the care, custody and control over the minor plaintiff, Benjamin Bidlack on the date, time and place aforesaid, said defendant did fail to exercise appropriate control over his person under circumstances in which she knew or should have known presented a danger to his person;

(b) Failure to ascertain that said minor plaintiff could be disembarked from the motor vehicle being operated by the defendant, Warren C. Kuhfahl under circumstances which would safeguard his safety;

(c) Failure to maintain an appropriate lookout for the safety and well being of the minor plaintiff after allowing said minor plaintiff to disembark the motor vehicle being operated by the defendant, Warren C. Kuhfahl;

(d) Failing to exercise due care under all the circumstances.

The count of the Complaint alleging negligence of Warren Kuhfahl is set forth as follows:

(a) Having voluntarily assumed the care, custody and control over the minor plaintiff, Benjamin Bidlack on the date, time and place aforesaid, said defendant did fail to exercise appropriate control over his person under circumstances in which he knew or should have known presented a danger to his person;

(b) Failure to ascertain that said minor plaintiff could be disembarked from the motor vehicle being operated by the defendant, Warren C. Kuhfahl under circumstances which would safeguard his safety;

(c) Failure to maintain an appropriate lookout for the safety and well being of the minor plaintiff after allowing

said minor plaintiff to disembark the motor vehicle being operated by the defendant, Warren C. Kuhfahl;

(d) Failure to select an appropriate location for the disembarking of the minor children passengers of the vehicle being operated by him;

(e) Failing to exercise due care under all the circumstances.

Thus, both Mr. and Mrs. Kuhfahl are alleged to have been negligent in failing to exercise due care in Benjamin's disembarkation from their vehicle and that such negligence arose out of the use of their car to which Benjamin's severe injuries were causally connected.

The relevant section of the insurance policy reads as follows:

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident ... 'covered person' as used in this part means (1) you or any family member *for the ownership, maintenance or use* of any auto or trailer.

The instant trial court set about determining whether the testimony produced at the depositions established a causal connection between Benjamin's injuries and the use of the Kuhfahls' car as to effectuate the pertinent insurance policy provision and thus requiring State Auto to defend the Kuhfahls. Paramount in the trial court's decision that the instant accident fell within the terms of the Kuhfahls' policy was the principle that where the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured, *citing Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961). The trial court found the phrase "for the ownership, maintenance or use" to be such a phrase. The court then summarized what occurred in relation to the Kuhfahl vehicle, *i.e.*, that Mr. Kuhfahl remained in the driver's seat while his wife assisted the children in exiting the car, that the accident occurred immediately after Benjamin left the

vehicle, and that the Kuhfahls were intending to resume their travel. The trial court was unwilling to rule that the occurrence was not a result of the use of the automobile. We agree with the trial court.

In this case we are not persuaded that appellant State Auto has not as yet confined the within claim against the Kuhfahls, the insureds to a recovery that their policy did not cover. We, and the court below, are being urged by State Auto to rule as a matter of law that Benjamin Bidlack's injuries are so removed from the Kuhfahls' ownership, maintenance, or use of their insured automobile that under no interpretation of the facts in this case is State Auto obliged to defend or provide potential coverage for the Kuhfahls.

The issue confronting us is not whether Benjamin's injuries were proximately caused by the Kuhfahls. On the contrary, our Supreme Court explained in *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co., supra,* 403 Pa. at 607–8, 170 A.2d at 573, a case in which liability of the insurer rested on the interpretation of "arising out of the ownership, maintenance or use of" a horse trailer,

> When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer as to be emcompassed within the scope of proximate causation, it could have and should have so stated in its policy. Construed strictly against the insurer, "arising out of" means causally connected with, not proximately caused by. "But for" causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.

Thus, our inquiry, is whether Benjamin's injuries are causally connected with the Kuhfahls' ownership, maintenance or use of their car.

A number of cases have considered the interpretation of similar, if not identical, phrases in insurance policies in varying contexts. State Auto offers the case of *Presbyterian University of Pennsylvania Medical Center v. Keystone Insurance Co.*, 251 Pa.Superior Ct. 71, 380 A.2d 381 (1977) in support of its contention that the facts as alleged in the instant case are not within the "ownership, maintenance, or use" of any auto or trailer. In *Presbyterian,* a Mr. Bass was driven to the hospital by his wife in the family automobile. The wife parked the car at the curbside and then went into the hospital to summon a hospital orderly to go to the car to assist in removing her husband from the car and place him in a wheelchair. In attempting to assist Mr. Bass, the orderly mishandled Mr. Bass who fell to the ground and sustained serious injuries as the result of the fall. He brought suit against the hospital which then sought coverage under the "loading and unloading" provisions of Mr. Bass' automobile coverage. We found that the "loading and unloading" clause of the policy was an extension of the "arising out of the ownership, maintenance or use" clause in the policy, and held that the hospital was not entitled to coverage under the Bass policy because there was "no connection between Bass' fall and the use of the insured's automobile." We found, additionally, that the automobile "was sitting passively at the curb" when the accident occurred. Thus, the hospital was not entitled to a defense by the insured party's car insurer. As appellants characterize it, the automobile in *Presbyterian, supra,* was merely incidental to the injuries incurred.

Appellant refers us to numerous other cases in which the role of a vehicle and the insurer thereof was found to be merely incidental to the injuries sustained. In *Day v. State Farm Mutual Insurance Co.*, 261 Pa.Superior Ct. 216, 396 A.2d 3 (1978), this court reversed a judgment on the merits for a plaintiff who sought Uninsured Motorist coverage in an assumpsit action against his own insurer for injuries incurred in a fist fight with another driver. The two cars had just collided and the plaintiff sustained a broken ankle as a result of the altercation that followed it. The question

was whether Day could successfully seek recovery for his broken ankle from his car insurer under the "arising out of the ownership, maintenance or use" provision. This court found the Day's injury was not within the scope and terms of the policy.

In an action under the Pennsylvania No-Fault Motor Vehicle Insurance Act, (repealed), *Camacho v. Nationwide Insurance Co.*, 314 Pa.Superior Ct. 21, 460 A.2d 353 (1983), *affirmed* 504 Pa. 351, 473 A.2d 1017 (1984) this court was faced with an interpretation of legislative intent of an injury suffered from the "maintenance and use of a motor vehicle" for purposes of recovery for a person into whose car an exploding bottle was thrown. The driver was injured as he attempted to throw it out of the car. This court affirmed the denial of recovery on the basis that the no-fault legislation was intended to cover motor vehicle accidents. In *Camacho*, the motor vehicle was incidental to the injury in an intentional tort action. *See also Ohio Casualty Group Insurance Companies v. Bakaric, et al.*, 355 Pa.Superior Ct. 345, 513 A.2d 462 (1986) (Passenger-wife being shot by driver-husband as they sat in husband's car not "resulting from the use" of the car.); *Erie Insurance Exchange v. Eisenhuth*, 305 Pa.Superior Ct. 571, 451 A.2d 1024 (1982) (Gunshot wound received by passenger in police-pursued vehicle did not arise out of the use of the car.)

Turning our focus to the instant case, we cannot find that the Kuhfahl car was merely incidental to Benjamin's injuries. His location at the time the colliding car struck him was directly linked to where Mr. Kuhfahl stopped his car. Mr. Kuhfahl's "use" of his vehicle involved the transportation of Benjamin from school back to his street, much as a school bus would. The only reason Benjamin was where he was when he was struck includes the Kuhfahl vehicle which at that time was deliberately used for the transporting of children. Benjamin's injuries are capable of being regarded by a jury as causally related to the use which the Kuhfahls chose to make of their car, with the degree of relation depending on the jury's resolution of how the other parties'

actions, including Benjamin's, enter into their decision-making process. However, that part of this action is not our concern. So long as the complaint covers an injury which might or might not fall within the coverage of the policy, the insurance company is obliged to defend.

The causal connection in this case is no more remote than that in *Eichelberger v. Warner*, 290 Pa.Superior Ct. 269, 434 A.2d 747 (1981). In that case we were asked *inter alia*, to construe the provisions of Dava Rice's insurance policy for purposes of coverage. We found her untoward death by a passing vehicle as she stood on a highway watching another person fill the empty gas tank of her car as arising out of the maintenance and use of her car, in a policy similar to the instant policy. We said,

> ... had not the Rice vehicle run out of fuel, Dava Rice would not have been standing on the highway waiting while Herby Eichelberger poured gasoline into her car. It cannot be said the Dava Rice's negligent act of stepping in front of an oncoming car was so remote from the ownership, maintenance or use of her vehicle as to be unconnected with them.

*Id.*, 290 Pa.Superior Ct. at 274, 434 A.2d at 750.

█ In a case similar to this one, *National Indemnity Co. v. Farmers Home Mutual Insurance Co.*, 95 Cal. App.3d 102, 157 Cal.Rptr. 98 (1979), the California Court of Appeals held that where a five year old child whom the insured was babysitting was struck by another car immediately after alighting from the insured's automobile and running into the street the injury arose out of the "use" of the automobile. The car insurer argued that the car had nothing to do with the injury. The court disagreed.

> An automobile can be in "use" even though at rest. (*United Services Automobile Assn. v. United States Fire Ins. Co.*, 36 Cal.App.3d 765, 111 Cal.Rptr. 595.) Further, National's policy specifically provides that "use" of an automobile includes loading and unloading. Case law is to the same effect. (*Argonaut Ins. Co. v. Transport Indemn. Co.*, 6 Cal.3d 496, 99 Cal.Rptr. 617, 492

P.2d 673; *also see* Black's Law Dict. (4th ed.) "Unloading".)

The presence of small children in an automobile imposes a particular duty of care and alertness upon the driver in selecting the place for and supervising the manner of discharging the children from the vehicle. The conduct of an ambulatory child of tender years is often impulsive and unpredictable. (*Hilyar v. Union Ice Co.*, 45 Cal.2d 30, 286 P.2d 21.) The process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle.

*Id.* at 106, 157 Cal.Rptr. at 100–101.

Thus, in *National Indemnity Co.* the injury was found to be within the car insurance policy and excluded by the homeowner's policy which was also at issue.[2] The conduct of the insured which contributed to the injury was found incapable of being disassociated from the use of the vehicle. So also in this case.

■ We hold, therefore, that a potential nexus exists between the injuries sustained by Benjamin Bidlack and the use of the Kuhfahl automobile so that State Auto is obliged to defend the Kuhfahls in the underlying action.

However, we agree with State Auto that all that has been decided in this declaratory judgment action is that State Auto owes the Kuhfahls a defense. Whether or not State Auto must provide coverage is yet to be determined in the underlying action.

Judgment affirmed.

**2.** In this case, unlike the *National Indemnity Co.* case, "use" of the automobile is not defined in the State Auto policy, so it could be argued that unloading and loading of the insured vehicle was not included in the meaning of "use". However, we refuse to interpret "use" in such a narrow fashion since we construe the term liberally in favor of the insured. *See* Couch on Insurance 2d, § 45:74 (Rev. ed. 1981). Moreover, the decision in *National Indemnity Co., supra,* did not rest on the "loading and unloading" definition alone. It is likely the Court would have reached the same conclusion without it.