## State Farm Mutual Automobile Insurance Co. v. Burdge

*James Horne,* for plaintiff.
*Michael Johnston,* for defendants.

QUIGLEY, *P.J.,* July 22, 1992—This case is before the court on plaintiff's motion for summary judgment on an action for declaratory judgment. Plaintiff asserts that it is not responsible for defending or otherwise indemnifying defendant Maxwell Burdge. This court, after a thorough analysis of all pleadings, hereby grants plaintiff's motion for summary judgment.

The procedural history of this case dates back to August 9, 1988, at which time defendant Burdge was convicted of involuntary manslaughter, aggravated assault, reckless endangerment, and possession of the instrument of a crime. On or about August 24, 1990, State Farm Mutual Auto. Insurance Co. initiated this action for declaratory judgment. On July 11, 1991, plaintiff served defendants with interrogatories for answer which, to this date, have not been answered. A request for admissions was served on all defendants on May 7, 1992, with only Powley and Mefferd answering. Defendant Burdge has not answered any of the discovery requests since the initiation of this action.

This case arose out of a domestic dispute which occurred on March 10, 1988, between defendant Burdge and his girlfriend, defendant Kimbra Powley. Burdge discharged a 12-gauge double-barreled shotgun into a motor vehicle occupied by Powley, her two-year-old brother, Joshua Mefferd, and her five-year-old daughter, Cassandra Paden. As a result of the shooting, Paden died; Powley lost the

sight in her right eye; and, Mefferd received injuries to his hand and forearm. A jury convicted Burdge of involuntary manslaughter in the death of Paden, aggravated assault of Powley, reckless endangerment of Powley and Mefferd and possession of the instrument of a crime.

The standard for determination of a declaratory judgment action is much akin to that of an equity action. *Shaffer v. Flick,* 360 Pa. Super. 192, 520 A.2d 50, 51 (1987). The test is whether the trial court's conclusion can reasonably be drawn from the evidence presented. *State Farm Mutual Insurance Co. v. Judge,* 405 Pa. Super. 376, 592 A.2d 712, 713 (1991), citing *Estate of Tippins,* 487 Pa. 107, 408 A.2d 1377, 1380, n.2 (1979); See also *Lombardo v. DeMarco,* 350 Pa. Super. 490, 504 A.2d 1256, 1258 (1985).

In setting forth the principals of law governing the granting of a motion for summary judgment, the Superior Court has said:

"Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there exists no issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *Williams v. Pilgrim Life Insurance Co.,* 306 Pa. Super. 170, 452 A.2d 269 (1982). The moving party has the burden of proving that there is no material issue of fact and the court must accept as true all well pleaded facts in a light most favorable to the non-moving party. *Nash v. Chemetron Corp.,* 246 Pa. Super. 595, 371 A.2d 992 (1977)" *State Auto. Insurance v. Kuhfahl,* 364 Pa. Super. 230, 527 A.2d 1039, 1040 (1987).

The plaintiff first asks us to decide, as a matter of law, whether they have a duty to defendant Burdge in relation to the intentional ramming of a 1956 Chevrolet into a 1977 Dodge. Though the court notes defendants failure to answer requests for discovery pertaining to damages and injuries caused by the impact of the two vehicles, we nonetheless find this question of liability without merit based on defendant Burdge's testimony at his criminal trial.

In *Nationwide Mutual Insurance Co. v. Hassinger, et al.,* 325 Pa. Super. 484, 473 A.2d 171 (1984), this court found that intentional acts of the insured fell outside of the insurance coverage. In *Hassinger,* the insured struck and killed the decedent after intentionally swerving off the road, over a curb and into a parking lot. After a trial on the issue of intent, a jury found that the insured did act intentionally and therefore Nationwide was not responsible in any way. The Superior Court laid out the test in *D'Auria v. Zurich Insurance Co.,* 352 Pa. Super. 231, 507 A.2d 857 (1986), as to whether an insurer has a duty to defend its insured:

"Even though the insurance policy states that the insurer must defend against allegations which are groundless, false or fraudulent, this does not mean that the insurer has a duty to defend any suit filed against the insured. The duty to defend is limited only to those claims covered by the policy. Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy coverage if they were true. It does not matter if in reality the facts are completely groundless, false or fraudulent. It is the face

of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." *D'Auria*, 507 A.2d at 859. (emphasis and citations omitted)

The present case does not fall within the ambit of defendant Burdge's auto policy. Defendant Burdge testified at his trial that he intentionally rammed his vehicle into the car. The following notes of testimony clearly portray his intent:

*By the court—*

*Q.* "Where did you go?"

*A.* "To my mother's."

*Q.* "When you got to your mother's where did you pull in?"

*A.* "In behind the car."

*Q.* "Did the cars meet at all, or what?"

*A.* "Yes, I rammed the truck into the back end of the car."

*Q.* "Was that an accident or on purpose?"

*A.* "I did it on purpose." *Commonwealth v. Burdge,* 42 of 1988 (Juniata C.P.) (N.T. 26).

This statement, made under oath, in the context of a criminal trial, illustrates the fact that defendant Burdge intentionally struck the car. This court, based on the fact that defendant Burdge was facing criminal prosecution and possible imprisonment in a correctional institution, finds these statements to be dispositive of the issue in question.

In addressing the second issue presented by plaintiff, this court will first look at the threshold issue of whether these injuries arose out of the ownership, maintenance or use of a motor vehicle. In *Ohio Casualty Group of Insurance Cos. v. Bakaric*, 355 Pa. Super. 345, 513 A.2d 462 (1986) (hereinafter *Bakaric*), Judge Wickersham, in writing for the Superior Court, referred to this issue as explained by Judge Schaffner:

"A lay person's consideration of this factual situation and the language of the policy would probably produce a conclusion that any damages awarded in a civil suit between the Bakarics would not result from the use of an automobile by them, but from the wanton use of a gun. We believe the proper legal conclusion should be the same. Giving the words of the insurance policy in question the plain and ordinary meaning of its terms ... can we say that any damages Mr. Bakaric may have to pay as a result of the shooting in this case were 'resulting from the ownership, maintenance, use, ... of your automobile...?' We do not think that we can. The basic function that courts perform in the consideration of a policy like this one, Nationwide's, is to ascertain the intention of the parties to the contract. We think that the parties here were contemplating insurance coverage for injuries caused by motor vehicles and not by large caliber revolvers. We think that, for the policy to pertain, there must be a causal connection between the use of the automobile and the injury sustained." *Bakaric*, 513 A.2d at 466, citing lower court opinion at 8-9. (citations omitted)

In *Bakaric,* while arguing in the front seat of a car, appellee-husband shot appellant-wife. *Bakaric,* 513 A.2d at 463, fn. 1. The Superior Court found that there was no direct causal relationship between the injury and the car. *Bakaric,* 513 A.2d at 465.

In *Erie Insurance Exchange v. Eisenhuth,* 305 Pa. Super. 571, 451 A.2d 1024 (1982), the Superior Court found that a passenger, injured by a police officer, had no claim against the driver's automobile insurance carrier. In this case, the innocent passenger was shot by a police officer after a brief car chase. *Erie Insurance Exchange,,* 396 A.2d at 1025. In finding the insurer not liable, the court quoted *Day v. State Farm Mutual Insurance Co.,* 261 Pa. Super. 216, 396 A.2d 3 (1979):

"The real issue in this case involves the instrumentality used to cause the injury, not whether it was intentional or accident inflicted. Automobile insurance, including uninsured motorist provisions, are designed to compensate victims for vehicle-caused injuries." *Day,* 396 A.2d at 5.

These cases are very similar to the case at bar. Defendant Burdge, whether negligently or intentionally, fired a shotgun into the car, killing Paden and injuring Powley and Mefferd. Neither occupying his car at the time, nor using it as an instrumentality, defendant Burdge's action cannot fall within the language of this policy. If everyone who drove to the scene of their crime could rely on their auto insurance carrier to indemnify them for damages or for defending them, the resulting effect on auto insurance carriers would be catastrophic.

Under the facts as plead in the complaint pertaining to this issue, we cannot find anything more that an incidental involvement of a motor vehicle. The vehicle in no way contributed to the injuries sustained from the shotgun blast and therefore we find this claim to be without merit and hereby dismiss it.

The court hereby grants plaintiff's motions for summary judgment on their action for declaratory judgment.

### ORDER

And now, July 22, 1992, in accordance with the within memorandum, plaintiff's motions for summary judgment are granted.