## Hoover v. McCloskey Builders

C.P. of Blair County, no. 98 GN 4365.

*Peter J. Mansmann,* for plaintiffs.
*Marc T. Levin,* for defendant.
*J. Michael Dorezas,* for additional defendant.

CARPENTER III, *J.,* April 6, 2000—This motion comes before the court on defendant McCloskey's motion for partial summary judgment (joined in by defendant Fleming Foods t/d/b/a Jubilee Foods). Briefs have been filed and reviewed by this court together with the relevant case law. Oral argument was held to a conclusion on February 11, 2000. We have reviewed the existing record and submissions. This matter is now ripe for disposition.

On December 31, 1997, plaintiff Sondra Hoover, slipped and fell on what she contends was an icy spot

covered by snow in the parking lot of the original defendant Fleming Companies Inc. This fall occurred while she was in the process of exiting her vehicle. Sondra Hoover is unable to testify with certainty whether or not she was in the process of alighting from her vehicle or had actually completed that process in the sense of having both feet on the ground at the time she fell. It is agreed she fell in the immediate proximity of her car with the vehicle door open so she was "generally" exiting her vehicle.

On these facts, defendants contend any injury sustained by plaintiff, Sondra Hoover, arose out of the "maintenance and use" of a motor vehicle. Therefore, her claims are controlled by the limitations and defenses available under the Pennsylvania Motor Vehicle Financial Responsibility Law, including section 75 Pa.C.S. §1722. This finding would have the effect of denying plaintiff Hoover recovery for her medical bills in this slip and fall case against Fleming Foods pursuant to section 1722. Defendant argues injuries arising from the process of exiting from a motor vehicle are properly included in maintenance and use of that vehicle. The present section 1722 clearly fails to address this issue. Recognizing this, defendant contends we should apply a predecessor statute (40 P.S. 1009.101) which included exiting from the vehicle as part of the definition of maintenance and use in the old no fault law. We reject this argument as a dispositive basis for partial summary judgment.

Indeed, we believe whether we apply the definition of maintenance and use contained in the old no fault law or abandon that definition under present Pennsylvania law the result is exactly the same—namely, Sondra Hoover was *not* in the maintenance and use of her vehicle at the time of this accident. In so holding, we note that Penn-

sylvania cases under both the no fault law and the MVFRL have consistently required two findings to establish maintenance and use:

(1) that the person is engaged in the lawful use of an insured vehicle. That criteria be deemed to include (but not be limited to) occupants.

(2) That there be a causal relation or connection between the injury and the vehicle.

In this case, we conclude the second factor above is totally dispositive. We cite with approval to *U.S. Underwriters Insurance Company v. Liberty Mutual Insurance Company*, 80 F.3d 90 (1996) where the court interpreted Pennsylvania law as follows:

"If nothing else, *Lucas-Raso [v. American Mfrs. Ins. Co.,* 441 Pa. Super. 161,] 657 A.2d 1 (1995), and the cases it surveys make clear that the crucial point for triggering 1720's maintenance and use prohibition is a causal connection between vehicle and injury. We, therefore, turn to that element.

"In assessing whether the necessary causal nexus exists we could—as the parties wish—struggle with the legal equivalent of angels and pinheads. For example, the vehicle was obviously in a sense a cause of the accident; Hilpl was alighting from the car when he fell; the car was a part of the stream of events that led to his injury. Viewing causation in these terms, however, makes it essentially all-encompassing; If not for the unfortunate coincidence of a multitude of causes, Hilpl, his car, and a layer of grease might not have combined so painfully on that late November day. This approach to causation would bring section 1720 into play whenever an automobile was even tangentially related to an accident, since absent the car, the accident arguably might not have occurred. This in turn would contravene the Pennsylva-

nia Superior Court's repeated cautions that the Financial Responsibility Law was not intended to be a general liability statute, but rather a system of compensation for 'losses directly resulting from motoring accidents.' [441 Pa. Super. at 167,] 657 A.2d at 3. Nevertheless, so the counterargument goes, here the car was involved.

"Fortunately, we can avoid this debate. It is a matter of hornbook tort law that every incidental factor that arguably contributes to an accident is not a 'but for' cause in the legal sense. See *Berry v. Borough of Sugar Notch,* 191 Pa. 345, 43 A. 240 (1899). Our survey of Pennsylvania cases demonstrates that the Commonwealth's understanding of 'use of a motor vehicle' simply will not encompass the causal nexus at issue here. See *Smith v. United States Auto Ass'n,* 392 Pa. Super. 248, 572 A.2d 785, 787 (1990) (rejecting claim that injury from hayride arose from maintenance or use of a motor vehicle), *appeal dismissed,* 529 Pa. 24, 601 A.2d 276 (1992); *Roach v. Port Autho. of Allegheny County,* 380 Pa. Super. 28, 550 A.2d 1346 (1988) (rejecting claim that bus passenger injured in fight between two other passengers arose from maintenance or use of a motor vehicle); *Alvarino v. Allstate Ins. Co.,* 370 Pa. Super. 563, 537 A.2d 18 (1988) (holding that injury to the child bitten by dog while passenger in car did not arise from use of motor vehicle); *Camacho v. Nationwide Ins. Co.,* 314 Pa. Super. 21, 460 A.2d 353 (1983) (holding that injury to driver from explosive thrown into his car by passenger in passing automobile did not arise out of maintenance of use of vehicle), *aff'd,* 504 Pa. 351, 473 A.2d 1017 (1984); *Schweitzer v. Aetna Life & Cas. Co.,* 306 Pa. Super. 300, 452 A.2d 735 (1982) (holding that injuries to woman, who was pushed into her automobile and beaten inside automobile by operator of motorcycle, did

not arise out of maintenance or use of a motor vehicle); *Erie Ins. Exchange v. Eisenhuth,* 305 Pa. Super. 571, 451 A.2d 1024 (1982) (rejecting claim that injuries to automobile passenger shot by police officer in pursuing vehicle arose out of maintenance or use of a an automobile); see also, *Pecorara v. Erie Ins. Exchange,* 408 Pa. Super. 153, 596 A.2d 237 (1991); (rejecting as absurd a literal interpretation of 'used by any person . . . employed . . . in the automobile business'); *Ferry v. Protective Indem. Co.,* 135 Pa. Super. 266, 38 A.2d 493 (1944) (refusing coverage for injury caused to pedestrian while truck driver was loading truck); cf. *Walters v. Kamppi,* 188 Pa. Commw. 487, 545 A.2d 975 (1988) (finding requirements of section 1720 met where truck driver was injured in automobile accident caused by slippery substance on highway from allegedly negligent road maintenance), *appeal denied,* 520 Pa. 622, 554 A.2d 513 (1989). We also note that the words 'occupying, entering into, or alighting from a motor vehicle,' which appeared in the definition of 'use or maintenance' under the old Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. §1009.106 (repealed), were not included when the legislature replaced the No-Fault Act with the Financial Responsibility Law. We believe that this action shows a legislative intent consistent with the Pennsylvania Superior Court's understanding. Hilpl's activity does not fall within the meaning of section 1720, as intended by the legislature and interpreted by the courts.

"In concluding that there was no causal connection between Hilpl's alighting and his subsequent accident, we place particular reliance on the Superior Court of Pennsylvania's discussion in *Ohio Casualty Group of Ins. Cos. v. Bakaric,* 355 Pa. Super. 345, 513 A.2d 462 (1986), *appeal denied,* 513 Pa. 633, 520 A.2d 1384 (1987). In

*Bakaric,* a husband injured his wife by shooting her in the face with a handgun. There was evidence that the discharge occurred as the husband forced his wife into the driver's seat of their automobile and then pushed her across the seat to the passenger's side. *Id.,* 513 A.2d at 463 n.1. The court refused to interpret the incident as resulting from the use of a motor vehicle 'since it is not clear in this instance that entering or loading the vehicle caused the injuries.' *Id.* at 465. The court then explained that: A layperson's consideration of this factual situation . . . would probably produce a conclusion that any damages awarded [the couple] would not result from the use of an automobile by them, but from the wanton use of a gun. We believe that the proper legal conclusion should be the same. *Id.* at 466 (quoting slip op. of trial court).

"The sentiments expressed in *Bakaric* convey our view of the present case. Pennsylvania law makes clear that maintenance or use of a motor vehicle requires causation. The court must determine the 'instrumentality used to cause the injury.' *Spisal v. Nationwide Mut. Ins. Co.,* 329 Pa. Super. 483, 478 A.2d 891, 893 (1984). A layman would understand that the instrumentality used to cause the injury in the case at bar was the substance on the surface of the parking lot. The cause of Hilpl's injury was the fact that he slipped on grease, and all the clever arguments of skilled legal advocates cannot alter this central event. It was 'mere fortuity' that Hilpl was still partially in his car when he slipped. *Pecorara,* 596 A.2d at 240. Causation, however, requires more than 'mere happenstance.' *Roach,* 550 A.2d at 1349."

As the federal court determined in *Underwriters v. Liberty* we believe causation can be shown only where the vehicle is directly involved in causing the injury. In

the case sub judice, as in *Underwriters,* it bore no such connection. As surely as the slip and fall in *Underwriters* was caused by the grease, this accident was caused by the snow. The presence of a vehicle contributed to the accident not at all.

We should add this result is totally consistent with a long line of Pennsylvania cases under both the MVFRL and the old No Fault Act which preceded it. In addition to the cited cases, particularly *Roach* and *Alvarino* (cited by the Third Circuit Court of Appeals in the discussion above), we would direct the reader to *Spisak v. Nationwide Mutual Insurance Co.,* 329 Pa. Super. 483, 478 A.2d 891 (1984) and *Crawford v. Allstate Insurance Co.,* 305 Pa. Super. 167, 451 A.2d 474 (1982) as demonstrating the long held position of Pennsylvania courts that in order for maintenance and use to be established, the injury or death must be causally related to the use of a motor vehicle. (See also, *Day v. State Farm Mutual Insurance Co.,* 261 Pa. Super. 216, 396 A.2d 3 (1978) where it was again determined the injury should arise at a time when the parties were using their car "as a vehicle" as a basis for a compensable injury.) Finally, we invite review of *Manufacturer's Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961) (decided even before the enactment of the No Fault Act) construing the phrase arising out of the ownership, maintenance, or use of a motor vehicle in an automobile insurance policy to include a causation requirement.

The defense presents us with no credible argument the legislature intended to encompass all injuries, no matter how tenuous, as compensable under the Financial Responsibility Law. As the Superior Court opined in *Roach,* we have consistently distinguished between those injuries the legislature intended to be compensated exclu-

sively by no fault and those to be left to other remedies by requiring a causal connection between the injury and the maintenance and use of a motor vehicle, *Roach,* 380 Pa. Super. at 34, 601 A.2d at 1349. We agree with Judge Olszewski when he opined in *Lucas-Raso* as follows:

"We would hold that section 1720 does not apply because the 'action' at issue, the one in which appellee insurer has asserted its subrogation rights, is appellant's slip-and-fall case against the parking lot owner and its maintenance contractor. This tort suit is not an 'action arising out of the maintenance or use of a motor vehicle'; rather, it is an action arising out of the tort-feasors' alleged negligence in maintaining a parking lot. *For this reason, we would find that we need not address the question of whether appellant was 'occupying' her vehicle when she fell." Id.* at 170, 657 A.2d at 5. (emphasis added)

What is true in *Lucas-Raso* and in *Underwriters* is true here. Accordingly, and consistent with the above we enter the following order.

### ORDER

And now, April 6, 2000, defendant's motion for partial summary judgment is denied.