**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2565
_____

NATIONAL LIABILITY & FIRE INSURANCE CO.
Appellant

v.

BRIMAR TRANSIT, INC.

PITTSBURGH PUBLIC SCHOOL DISTRICT
Intervenor
_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No. 2-18-CV-01129)
District Judge: Hon. Nora Barry Fischer
_____

Argued
July 13, 2023

(Filed: September 22, 2023)

Before: PHIPPS, MCKEE, and RENDELL, *Circuit Judges*.
_____

O P I N I O N*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

This insurance coverage dispute arises from the sexual assault of a special needs student aboard her school bus. National Liability and Fire Company sought a declaration in the Western District of Pennsylvania that it had no duty to defend or indemnify the bus company or its school district client in a state court action brought by the student and her mother because its policy did not cover the incident alleged in their complaint. The District Court held National had to defend both entities and later concluded it also had to indemnify them. We disagree with the first conclusion, which dooms the second as well. Accordingly, we will reverse the orders of the District Court.

## I.[1]

Brimar Transit, Inc. transported students for the Pittsburgh School District under a multi-year contract. National insured the vehicles in Brimar's fleet. Among the students Brimar transported to and from school were children with special needs. One of those students—an adolescent girl named K.M.—had developmental challenges known to Brimar and the District. Traveling on the bus with her each day was a 12-year-old boy with similar challenges who had sexually assaulted K.M. multiple times, including a groping incident during gym class. The gym incident led the District and Brimar to craft a specific plan to separate K.M. from the male student on the bus: K.M. sat right behind the

---

[1] We write primarily for the parties, and so we recite only the facts necessary to decide the case.

driver, while the male student sat in the rear. The regular bus driver followed the plan. And when she took maternity leave, her first replacement did too.

But on April 29, 2016, a second substitute driver took over the route without following the plan and sat K.M. next to the male student. Their proximity allowed the male student to use his body weight to pin K.M. to the seat. With K.M. trapped, the male student pulled down both their pants and assaulted her from behind. Despite being only several feet away during the assault, and despite the cries of other children, the driver did not intervene or even acknowledge the attack on K.M. K.M. managed to push the male student off her a short time later, though he assaulted her again by slapping her backside as she exited at her stop.

K.M. and her mother sued Brimar and the District in the Allegheny County Court of Common Pleas, alleging Brimar failed to tell the driver about the plan and failed to train and supervise her properly. They similarly alleged the District was negligent and should have ensured K.M.'s safety on the bus. National defended Brimar in the state court action after issuing a reservation of rights letter but declined to defend the District.

National brought this action for a declaratory judgment in the Western District of Pennsylvania and later moved for judgment on the pleadings, urging that it had no duty to defend the defendants for two reasons. First, it had no duty to defend Brimar because K.M.'s alleged injuries did not result from the "use" of the bus and there was an abuse and molestation exclusion that should apply. Second, it had no duty to defend the District as a non-insured.

3

The District Court disagreed with National on both counts. The Court held that National had a duty to defend both insureds, reasoning that K.M.'s complaint triggered coverage because it alleged injuries resulting from the use of Brimar's bus "as that term is commonly understood, transporting children from school to their homes." App. 28–29. The Court also held that the abuse and molestation exclusion in the Policy did not bar coverage since the complaint alleged a physical assault (the male student pinning K.M. down) that preceded the sexual one. The Court limited its ruling to the duty to defend.

While this action was pending, National paid the plaintiffs to settle the state court action for $150,000, seeking no contribution at all from Brimar or the District. National also paid nearly $420,000 in defense costs the parties generated in the state court action.

National then moved for summary judgment before the District Court and sought a declaration that it had no duty to indemnify Brimar or the District because the policy did not cover the incident alleged in K.M.'s lawsuit. The District Court denied National's motion and granted summary judgment to the District and Brimar on National's coverage claims. Relying on *Sapa Extrusions v. Liberty Mut. Ins. Co.*, 939 F.3d 243 (3d Cir. 2019), the Court held that because National's act of settling the state court claim before critical facts and evidence developed kept the District Court from making nuanced decisions about its duties to defend and indemnify, it would need to indemnify Brimar and the District.

National timely appealed.

4

National offers three challenges to the District Court's rulings below, but only one controls the outcome here. National urges that the District Court erred in holding it had a duty to defend Brimar or the District because there was no coverage under the policy. As explained more fully below, we agree with National on that point, so we will reverse the order of the District Court and remand for further proceedings.[3]

A. Discussion

Pennsylvania law imposes separate, though related, duties on insurers to defend and indemnify their insureds. *See Sapa Extrusions*, 939 F.3d at 249. Our focus on appeal is the District Court's ruling that National had a duty to defend Brimar and the District in the state court action. The law on this duty is clear. The determination of whether there is such a duty is based on "the factual averments contained in [the underlying] complaint[.]" *Id.* (alteration in original). Pennsylvania courts analyze those allegations using the "four-corners" rule: if the allegations even "*potentially* could support recovery under the policy," then "the insurer has a duty to defend its insured in the case." *Id.* (quotation

---

[2] The District Court's jurisdiction over this action was proper under 28 U.S.C. § 1332(a), and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

[3] National contends the District Court erred in two other respects. It urges that the District Court should not have found that the District was an insured under the policy. And it urges the District Court was wrong to deny it leave to file a Third Amended Complaint seeking recovery of defense and settlement costs. Given the ruling in National's favor on the coverage issue, we need not address the District Court's rulings on these points, as they are moot.

omitted). When applying the rule, a court must first "read the policy as a whole and construe terms according to their plain meaning." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (quotation omitted). And courts should construe ambiguous provisions "in favor of the insured and against the insurer" as "the drafter of the agreement." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quotation omitted). Next, a court examines the allegations of the underlying complaint, assuming their truth and ensuring they are "liberally construed in favor of the insured." *Id*. at 560 (citation omitted). If that examination reveals an allegation "potentially covered [by the insurance policy], the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (quotation omitted).

Thus, the Policy determines whether National had a duty to defend. Section II.A.1.c lays out the scope of coverage:

> **SECTION II – LIABILITY COVERAGE**
>
> A. Coverage
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." . . . . We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . .

App. 454. Based on that provision, National offers two ways in which the District Court erred in holding it had a duty to defend. First, the complaint pleads injuries "resulting from" the sexual assault, not the "use" of Brimar's bus. And second, sexual assaults like

6

K.M.'s are excluded by the Policy's "Abuse or Molestation Exclusion." We agree with National's first point and need not address the second.

To answer the specific question of whether K.M. alleged injuries that "result[ed] from" the "use" of the bus, the District Court leaned heavily on the Pennsylvania Superior Court's opinion in *Lebanon Coach Co. v. Carolina Cas. Ins. Co.*, 675 A.2d 279 (Pa. Super. Ct. 1996). There, a young girl tried to cross the busy highway at her designated stop and was pinned against the back of her school bus by an oncoming car. *Lebanon Coach*, 675 A.2d at 282. The Superior Court held the insurer had a duty to defend the bus company, reasoning that, as common carriers, school bus companies have the highest duty to maintain their passengers' safety. *Id.* at 291 n.16. The Court explained that a school bus company maintains that duty to its child passengers while they are "riding in the bus or alighting from the bus or leaving [its] immediate vicinity . . . at the completion of their journey." *Id.* (citation omitted). Applying those principles here, the District Court concluded Brimar had such a duty and therefore K.M.'s alleged injuries resulted from "use" of the bus because they occurred while the bus was in transit. App. 29.

National says the District Court misconstrued Pennsylvania law. It urges instead that, to trigger coverage, the "underlying bodily injury must be causally connected to the use of the insured vehicle *as a motor vehicle*[,]" but "the requisite causal connection does not exist where intervening actions that are not attributable to the use of the vehicle as a vehicle cause the injury." National Br. at 21–22 (citing *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90 (3d. Cir. 1996)) (emphasis in original). Using that analysis,

7

National urges that the state court complaint alleged that K.M.'s injuries resulted from the sexual assault, not "any reasonably contemplated use of the bus *as a bus*." National Br. at 22. In light of that, the male student's previous assaults confirm "[t]he bus was merely incidental to the sexual assault—*i.e.*, as the situs" of the attack. National Br. at 22. So Pennsylvania law required the District Court to find that the alleged facts did not "implicate auto liability coverage" under its Policy. National Br. at 22.

We agree with National. The Pennsylvania Supreme Court has observed that the term "arising out of" found in older insurance policies "means causally connected with, not proximately caused by." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961). More recently, the Pennsylvania Superior Court has explained that the term "resulting from," which is used in newer policies like National's, should be interpreted more narrowly than its older counterpart. *See Ohio Cas. Grp. of Ins. Cos. v. Bakaric*, 513 A.2d 462, 465 (Pa. Super. Ct. 1986) (collecting cases in the related no-fault context to synthesize the rule). The upshot is that "resulting from" requires a closer causal connection between the vehicle's use and the alleged injuries. *Id.*

*Bakaric* featured a bizarre episode of domestic violence in which a husband, suspecting infidelity, ambushed his wife and accidentally shot her in the face as he forced her over to the passenger side of her vehicle. *Id.* at 463 n.1. The Superior Court affirmed the jury's verdict finding no coverage under the policy because Pennsylvania law demanded a "connection between the harm done and the insured vehicle" that did not exist where the evidence showed the insured shot his wife in a parked car. *Id.* at 465–66. And

8

the Court, like the trial jury, was unmoved by the wife's attempt to sidestep the lack of connection by arguing that her husband was "loading" himself into the vehicle when the gun went off. *Id.* at 466.

In a case even more analogous than *Bakaric*, the Superior Court found the same lack of connection between the use of a transit bus and injuries a passenger suffered after an argument between two other riders erupted into a fistfight. *See Roach v. Port Auth. of Allegheny Cnty.*, 550 A.2d 1346, 1350 (Pa. Super. Ct. 1988). As the Court explained, the plaintiff could have found herself amid the same scuffle almost anywhere else, likely resulting in the same injuries. *Id.* at 1350–51. Her injuries were not tied to use of the bus simply because she happened to be a passenger on the bus when they occurred. *Id.* What's more, the Court rejected the plaintiff's invitation to hold that a public transit company's elevated duty as a common carrier lessened the causal connection needed for her to recover. *Id.* at 1350.

*Bakaric* and *Roach* drive the outcome here—especially *Roach*. K.M. properly alleged the Brimar bus was in "use" when the assault occurred. The question is whether her complaint alleged injuries "resulting from" that "use." We hold they did not. As in *Roach*, K.M.'s allegations that her injuries resulted from use of the bus—simply because she was a passenger on the bus when the injuries occurred—fails under Pennsylvania law.

*Lebanon Coach* does not persuade us otherwise. The District Court relied on the broad proposition that a school bus operator has a heightened duty of care while

9

transporting children, but the Superior Court's opinion is more closely tethered to the facts of that case and the use of the bus. The Court noted that the plaintiff's "location at the time the . . . car struck her was directly linked to where the Lebanon Coach driver stopped the bus." *Lebanon Coach*, 675 A.2d at 291. And it adopted the reasoning of the Georgia courts that "use" of the bus "continue[s] until each child has crossed any immediate road and is in a place of safety in the direction towards [their] destination." *Id*. at 292. Thus, *Lebanon Coach* is easily distinguishable from this case.

Because the allegations in the complaint do not forge a strong enough link between the use of the school bus and K.M.'s injuries, we conclude the District Court erred in finding National had a duty to defend Brimar and the District.

### III.

Accordingly, we will reverse the orders of the District Court and remand for further proceedings.[4]

---

[4] Given the lack of coverage, the District Court similarly erred in its ruling that National had a duty to indemnify. We do not opine on the additional question of National's entitlement to be reimbursed for defense costs it advanced to Brimar and the District, as well as the settlement it funded with the plaintiffs. National contends that it has both equitable and contractual rights to reimbursement of all amounts it has paid while having no duty to do so. *See* National Br. at 51 (citing *Essex Ins. Co. v. RMJC*, 306 F. App'x. 749, 755-56 (3d Cir. Jan. 7, 2009)). The District responds that neither theory offers National a viable route to recover the costs paid on its behalf. *See* District Br. at 36 (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 546 (Pa. 2010)). Given our opinion about National's duty to defend, the fact-intensive inquiry required, and the unsettled nature of Pennsylvania law on certain aspects of the issue, the District Court is better positioned on remand to address these issues.