452 A.2d 735

**Nancy SCHWEITZER, Appellant,**

v.

**AETNA LIFE AND CASUALTY COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1981.

Filed Oct. 8, 1982.

Reargument Denied Dec. 10, 1982.

Bernadette Barattini, Harrisburg, for appellant.

Robert Burke McLemore, Harrisburg, for appellee.

Before BROSKY, WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

Is a motor vehicle occupant who has been pulled from her vehicle and assaulted entitled to receive benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act?[1] The trial court held that damages caused by the assault could not

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq., 40 P.S. § 1009.101 et seq. (Hereinafter referred to as the No-fault Act.)

be recovered and entered summary judgment in favor of Aetna Life and Casualty Company, the no-fault insurance carrier. We affirm.

The facts are not in dispute. On July 13, 1979, Nancy Schweitzer, accompanied by her two children, was operating an automobile in Susquehanna Township. As she drew to a stop at the intersection of Edgemont and Herr Streets, a motorcycle operated by James Joseph Kostelec, Jr. stopped beside her vehicle. Kostelec shouted obscenities at Schweitzer; and, when Schweitzer pulled away from the intersection, he followed on his motorcycle at a dangerously close distance. On several occasions, in fact, the motorcycle ran into and struck the rear bumper of Schweitzer's vehicle. Schweitzer attempted to elude Kostelec, but her efforts were unsuccessful. Eventually, Kostelec ditched his motorcycle and approached the Schweitzer vehicle on foot. He pulled open the car door, grabbed Schweitzer and pulled her from the vehicle, pushed her back inside the car and beat her with his fist, all while continuing to shout obscenities.[2] Schweitzer was treated at the Emergency Room of Harrisburg's Polyclinic Hospital for bruises and a sprained wrist. She also suffered psychological difficulties as a result of the incident. All were sustained as a result of the assault. None were attributable to the earlier bumping of the vehicle by the motorcycle. After Aetna had denied a request for no-fault benefits, Schweitzer instituted this action in assumpsit. She appealed from the judgment entered in favor of Aetna.

Section 201 of the No-fault Act, 40 P.S. § 1009.201, provides in part: "If the accident resulting in injury occurs in this Commonwealth, any victim . . . is entitled to receive basic loss benefits in accordance with the provisions of this act." "Victim" is defined in Section 103 of the Act as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle . . . ." See: 40 P.S. § 1009.103.

---

2. Criminal charges filed against Kostelec resulted in a conviction of assault, for which Kostelec was sentenced, *inter alia,* to make restitution to Schweitzer in the amount of $1,200.

The No-fault Act further provides, with limited exceptions not here relevant, that " '[m]aintenance or use of a motor vehicle' means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into or alighting from it." *Id.*

Appellant contends that her injuries, even though intentionally inflicted by a third party, arose from the use or maintenance of a motor vehicle as a motor vehicle and that she was, therefore, a "victim" within the meaning of the No-fault Act. We are constrained to disagree.

In *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961), the Supreme Court had occasion, albeit in the context of interpreting an automobile insurance policy, to construe the words "arising out of the ownership, maintenance or use" of an automobile or trailer. The court held: " '[A]rising out of' means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy." *Id.,* 403 Pa. at 607–08, 170 A.2d at 573. See also: *Eichelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747 (1981).

The same construction of the phrase "arising out of the maintenance or use of a motor vehicle" can be applied to the No-fault Act. Thus, while the causal connection need not rise to the level of proximate causation, for purposes of coverage under the No-fault Act there must be some connection, more than mere chance or happenstance, between the injuries sustained and the insured vehicle.

Requiring a causal connection between the injury and the use of the automobile is in keeping with the legislative intent apparent in the "no-fault" scheme of motor vehicle insurance. In enacting the No-fault Act, the legislature sought to provide, at reasonable cost, a statewide system of protection and compensation for individuals injured as a result of motor vehicle accidents, irrespective of fault. 40 P.S. § 1009.102. An unprovoked, intentional, physical assault upon the driver of an automobile is not within the

scope of the protection contemplated by the legislature, which provided that an individual so injured should seek recourse in a common law tort action. 40 P.S. § 1009.-301(a)(3).

A similar approach was utilized by this court in *Day v. State Farm Mutual Insurance Co.,* 261 Pa.Super. 216, 396 A.2d 3 (1978), when required to determine an issue of uninsured motorist coverage.[3] There, Day had sustained injuries in a fistfight which took place on a grass plot between the north and southbound lanes of the Roosevelt Boulevard in Philadelphia. The fight had followed a collision involving appellee's automobile and a truck driven by a third person. The latter's liability carrier had denied liability coverage on grounds that Day's injuries were intentionally inflicted. In denying recovery under Day's uninsured motorist coverage, this court stated: "The real issue in this case involves the instrumentality used to cause the injury, not whether it was intentionally or accidentally inflicted. Automobile insurance, including uninsured motorist provisions, are designed to compensate victims for vehicle-caused injuries. There must be some connection between the harm done and the insured vehicle .... [Other factors] become[ ] relevant only after a determination is made that the injury complained of was caused by the vehicle. This is, in fact, the meaning of the language 'arising out of the ownership, maintenance or use of such uninsured motor vehicle ....' " (Citations omitted.) *Id.,* 261 Pa.Superior Ct. at 219–20, 396 A.2d at 5. The injury, a broken ankle, had been caused not by a motor vehicle but by the third person's knocking down the appellee. A loss so caused was held to be beyond the scope and terms of the uninsured motorist provisions of the Day policy.

An issue similar to that in the instant case was before a panel of this Court in *Erie Insurance Exchange v. Eisenhuth,* 305 Pa.Super. 571, 451 A.2d 1024 (1982). In that case, a vehicular passenger had been shot by a policeman during

**3.** Act of August 14, 1963, P.L. 909, § 1 as amended December 19, 1968, P.L. 1254, No. 397, § 1, 40 P.S. § 2000.

pursuit of the vehicle's driver. Applying the reasoning of *Day,* the court concluded that the passenger's presence in the vehicle was not connected causally to his injuries. Therefore, he was not entitled to recover no-fault benefits. Those facts presented a closer question than the facts in the instant case.

Our decision is consistent with decisions in other jurisdictions where analogous claims have been considered under provisions of No-fault statutes. In *In the Matter of Manhattan & Bronx Surface Transit Operating Authority,* 71 A.D.2d 1004, 420 N.Y.S.2d 298 (1979), *aff'd.,* 98 Misc.2d 657, 414 N.Y.S.2d 489, the New York court considered an assaulted bus driver's claim for no-fault benefits. The bus driver had been injured when, in the course of his duties as a bus driver, he had been stabbed by a passenger whom he refused to discharge from the bus at a location other than a designated bus stop. Under New York law, no-fault benefits were available to a person whose injuries arose out of the use or operation of a motor vehicle. Acknowledging that the operation of the bus entailed the discharge of passengers at designated locations and that the driver was injured while he was operating a bus, the court nonetheless determined that such facts were "insufficient to establish that the injury resulted from the use or operation of a motor vehicle as contemplated by the no-fault provisions of the Insurance Law." *Id.* at 1005, 420 N.Y.S.2d at 299. The court held that, in order for no-fault benefits to. be recoverable, the vehicle itself must actually have produced the injury. This requirement, in the court's view, "reflect[ed] the limitation of no-fault insurance to automobile torts as distinguished from the other types of tort. . . . [T]he injury resulted from a knife wielding passenger and the appellant's operation of the bus was largely incidental. The assault may not be characterized as a motor vehicle tort as contemplated by the no-fault insurance law." *Id.*

A Michigan court reached a similar result. In *O'Key v. State Farm Mutual Automobile Insurance Co.,* 89 Mich.App. 526, 280 N.W.2d 583 (1979) the plaintiff-appellant sought

no-fault benefits from his no-fault carrier for injuries received when he was shot as he sat outside his brother's home in an idling automobile. As required by Michigan no-fault law, the policy covered injuries " 'caused by accident and arising out of the ownership, operation and maintenance or use . . . of a motor vehicle.' " *Id.* at 528, 280 N.W.2d at 584. The court affirmed the entry of summary judgment for the insurer, concluding that while the injuries did arise out of an "accident," they did not arise out of the "ownership, operation, maintenance or use" of the automobile. " 'While the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental . . . . The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.' " *Id.* at 530, 280 N.W.2d at 585, quoting from *Kangas v. Aetna Casualty & Surety Co.,* 64 Mich.App. 1, 17, 235 N.W.2d 42, 50 (1975). The fact that the plaintiff had been an occupant of a motor vehicle at the time he sustained the injury was held not to be conclusive. The role of the automobile was incidental and in no way connected with the assault. Further, the court concluded, "an assault by an armed assailant upon the driver of a car [is not] the type of conduct that is 'reasonably identifiable' with the use of a car." *Id.* See also: *Stonewall Insurance Co. v. Wolfe,* 372 So.2d 1147 (Fla.Dist.Ct.App.1979), *cert. denied,* 385 So.2d 762 (Fla.1980); *Feltner v. Hartford Accident and Indemnity Co.,* 336 So.2d 142 (Fla.Dist.Ct.App.1976); *Mann v. Detroit Automobile Inter-Insurance Exchange,* 111 Mich.App. 637, 314 N.W.2d 719 (1981); *Detroit Automobile Inter-Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980). But see: *Weber v. State Farm Mutual Automobile Insurance Co.,* 284 N.W.2d 299 (N.D.1979).

Applying the reasoning of the foregoing decisions to the instant facts, we conclude that appellant's injuries did not arise from the use or occupancy of a motor vehicle. Although she had been occupying her automobile before being

pulled from it and had been pushed back into it before Kostelec struck her with his fists, her injuries were not causally related to her use or occupancy of a vehicle. When appellant was assaulted, neither she nor her assailant was acting in the role of motorist. Her injuries, therefore, cannot be said to have arisen from the use of a motor vehicle within coverage intended by the No-fault Motor Vehicle Insurance Act.

The judgment is affirmed.