537 A.2d 18

**Robby Gabriel ALVARINO a Minor, by His Father Gabriel ALVARINO and Gabriel Alvarino, Appellants**

**v.**

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1987.

Filed Feb. 3, 1988.

Dennis L. Scanlon, Philadelphia, for appellants.

William H. Resch, Jr., Philadelphia, for appellee.

Before CAVANAUGH, BECK and HESTER, JJ.

BECK, Judge:

This is an appeal from a grant of judgment on the pleadings in favor of appellee defendant Allstate Insurance Company.

In reviewing a grant of judgment on the pleadings, we must determine if the action of the trial court was based on a clear error of law or whether the pleadings raise factual issues that should clearly be decided by the jury. *Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986). In making this determination, we must confine ourselves to the pleadings and relevant documents attached thereto and accept as true all well pleaded statements of fact made by the party against whom judgment has been granted and consider against such party only those other facts that he specifically admits. *Jones v. Travelers Insur. Co.*, 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986). We do not consider pleaded conclusions of law nor do we draw unjustified inferences of fact. *Id.*

Under this standard, we find that the relevant facts for purposes of our review of the trial court's action are clear and are as follows. On September 14, 1985, appellant Robbie Alvarino and his father, appellant Gabriel Alvarino, were bicycling in their neighborhood when they came upon a neighbor who was driving his van through the neighborhood. The neighbor had a dog chained inside his van. The neighbor stopped his van to speak with the Alvarinos.

Robbie Alvarino then entered the van. The neighbor drove on with Robbie in the van and Gabriel following behind on his bicycle. The neighbor stopped the van shortly thereafter and Gabriel Alvarino caught up to the van and again stopped to speak to the neighbor. At that time, the dog bit Robbie Alvarino who was still in the van.

Gabriel Alvarino owned a policy of motor vehicle insurance issued by appellee Allstate Insurance Company. Appellant sought to collect first party benefits under that policy to cover medical expenses incurred by both himself and Robbie as a result of the dog bite.[1] Allstate refused the claim, contending that the policy did not afford coverage for expenses incurred because of the dog bite. Appellants then sued Allstate for the claimed benefits. Allstate answered the complaint and asserted New Matter, denying coverage, to which appellants filed a Reply. Allstate then filed a Motion for Judgment on the Pleadings which the trial court granted by Order dated December 9, 1986.

We are presented with only one issue in this appeal. That issue involves the proper construction of Sections 1711 and 1712 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons.Stat.Ann. §§ 1701—1798 (Purdon 1987) (the "Financial Responsibility Law"). These sections require an insurer issuing or delivering liability insurance policies covering motor vehicles to make available for purchase first party benefits with respect to "injury arising out of the maintenance or use of a motor vehicle ..." 75 Pa. Cons.Stat.Ann. §§ 1711, 1712. Appellants contend that the trial court erred in concluding that as a matter of law, their injuries arising from the dog bite did not arise out of the maintenance or use of a motor vehicle.

The heart of appellants' argument is as follows. Under the now repealed Pennsylvania No-fault Motor Vehicle Insurance Act, tit. 40, §§ 1009.101–1009.701 (Purdon 1987) (repealed effective Oct. 1, 1984), insurers were required to pay no-fault benefits for injuries arising out of the maintenance or use of a motor vehicle. In this regard, the

---

1. Mr. Alvarino alleges that he has suffered from various forms of mental distress as a result of viewing the accident.

No-fault Act was the same as the Financial Responsibility Act. *Id.* § 1009.103. However, the No-fault Act also required that for no-fault benefits to be paid, the injury had to arise from the use or maintenance of the motor vehicle "as a vehicle." *Id.* § 1009.103. On the other hand, the Financial Responsibility Law does not contain any reference to a requirement that the injuries arise from the use of a motor vehicle "as a vehicle". Thus, appellants argue that the legislature has evidenced an intent to broaden the scope of coverage under the Financial Responsibility Law and to require insurers to provide first party benefits in a case like that before us.

Although appellants indicate that there are no Pennsylvania cases decided either under the No-fault Act or the Financial Responsibility Law dealing with a situation precisely like the one presented in the instant case, they do cite two cases decided in other jurisdictions where injuries resulting from a dog bite occurring in a motor vehicle were held to be within the coverage of the applicable automobile policy. *See National Indemnity Company v. Corbo,* 248 So.2d 238 (Fla.1971); *Hartford Accident & Indemnity Co. v. Civil Service Employees Insurance Co.,* 33 Cal.App.3d 26, 108 Cal.Rptr. 737 (1973).

Appellee's short answer to appellants' argument, with which we agree, is divisible into two parts. First, appellee argues that under the principles developed in construing the No-fault Act, appellants are clearly not entitled to benefits in this case. Second, appellee argues that the change in statutory language on which appellants so heavily rely is irrelevant to this case and that, therefore, the principles developed under the No-fault Act are equally applicable here.

Appellee's analysis is unquestionably correct. The analysis is premised on the valid assumption that if appellants' injuries would not have been considered to have arisen out of the use of a motor vehicle under the No-fault Act and if the only changes to the statutory language of the Financial Responsibility Law concerning this requirement do not compel a different conclusion, then appellants are equally not

entitled to recover benefits under the Financial Responsibility Law. Moreover, appellee's analysis of the case law under the No-fault Act and appellee's conclusion that under that case law the injuries in this case cannot be considered to have arisen from the use of a motor vehicle are also correct. Lastly, we agree with appellee that the change in the language of the Financial Responsibility Law which eliminated the requirement of use "as a vehicle" does not change the result in this case.

In *Manufacturers Casualty Ins. Co. v. Goodville Mutual Casualty Co.*, 403 Pa. 603, 170 A.2d 571 (1961), a case decided before enactment of the No-fault Act, the Supreme Court construed the phrase "arising out of the ownership, maintenance or use" of a motor vehicle in an automobile insurance policy as follows:

> Arising out of "means causally connected with, not proximately caused by." "But for" causation, i.e., a cause and result relationship is enough to satisfy this provision of the policy.

*Id.*, 403 Pa. at 607–08, 170 A.2d at 573.[2] This construction of a requirement that an injury arise out of the maintenance or use of a motor vehicle has been carried over into interpretation of the No-fault Act's use of the same phrase. For example, in *Schweitzer v. Aetna Life and Casualty Co.*, 306 Pa.Super. 300, 452 A.2d 735 (1982), this Court relied on *Manufacturers Casualty* in concluding that:

> The same construction of the phrase "arising out of the maintenance or use of a motor vehicle" can be applied to the No-fault Act. Thus, while the causal connection need not rise to the level of proximate causation, for purposes of coverage under the No-fault Act there must be some

---

**2.** We note that in a very recent opinion of the Supreme Court dealing with a similar issue, i.e., interpretation of the phrase "use of an automobile" as used in automobile and homeowners liability insurance policies, the Court manifested a restrictive attitude toward the meaning of "use". *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363 (Pa.1987). In *Erie,* the Court held that "use" must be interpreted to denote an element of rational purpose. Thus, a 3½ year old boy's setting a car in motion did not constitute "use" of the car.

connection, more than mere chance or happenstance, between the injuries sustained and the insured vehicle. *Id.*, 306 Pa.Superior Ct. at 303, 452 A.2d at 737. The *Schweitzer* Court held that injuries sustained by the owner of a vehicle who was beaten while in her vehicle did not arise from the use of the vehicle. *See also Camacho v. Nationwide Ins. Co.*, 314 Pa.Super. 21, 460 A.2d 353 (1983), *aff'd*, 504 Pa. 351, 473 A.2d 1017 (1984) (injuries sustained by driver sitting in car from exploding bottle thrown into car did not arise out of use of motor vehicle); *Erie Insur. Exchange v. Eisenhuth*, 305 Pa.Super. 571, 451 A.2d 1024 (1982) (injuries sustained by passenger sitting in car when shot by driver did not arise out of use of motor vehicle).

The lesson from these and other cases on point is that there must be some causal connection between the injuries and the use of the motor vehicle. In other words, the involvement of the motor vehicle must be more than merely incidental to the cause of the injuries.

Under the facts as pled in the complaint in this action, we cannot see how there is any more than a merely incidental involvement of a motor vehicle in the situation that gave rise to appellants' injuries. We can see nothing about the use of this motor vehicle that contributed in any way to causing appellants' injuries. The only involvement of the motor vehicle in this case is that it was the situs of the dog bite. Under the authority cited above, the mere fact that a motor vehicle is the place where injuries are sustained is insufficient to establish a causal connection between the use of the vehicle and the injuries so as to require the payment of first party benefits. Indeed, as to appellant Gabriel Alvarino, the connection of the vehicle to the injuries allegedly sustained is even more remote than it is as to appellant Robbie Alvarino. While Robbie was in the vehicle, his father Gabriel was not.

The single Pennsylvania case cited by appellants, *Spisak v. Nationwide Mut. Ins. Co.*, 329 Pa.Super. 483, 478 A.2d 891 (1984), does not persuade us to the contrary. In *Spisak*, the court held that injuries resulting from inhalation of carbon monoxide while the injured party was sitting in a

motor vehicle did arise from the use of the vehicle. However, the *Spisak* court was careful to note that it so held because the use of the vehicle itself, i.e., the engine running and producing the noxious fumes, was the direct cause of the harm. Thus, the court expressly distinguished cases like the instant one where "... the harm arose from an instrumentality or external force other than the motor vehicle itself." *Id.*, 329 Pa.Superior Ct. at 486, 478 A.2d at 893.

Thus, appellants' injuries did not arise from use of the motor vehicle as that phrase has been interpreted under the No-fault Act. Given this conclusion, we turn to a consideration of whether the legislature's elimination in the Financial Responsibility Law of the No-fault Act's requirement that a motor vehicle be in use as a vehicle alters the result in this case. We conclude that it does not. As noted commentators on the Financial Responsibility Law have stated:

> Under the No–Fault Act, the courts found no coverage where the injury had no connection with the use of the vehicle. For example, in *Howe v. Harleysville Ins. Co.*, [313 Pa.Super. 65, 459 A.2d 412 (1983)] the Superior Court determined that an occupant of a motor vehicle who suffered a gunshot wound in the vehicle could not receive benefits. Denial of coverage under these circumstances should continue under the Financial Responsibility Law, since the rationale for these decisions does not arise from the "as a vehicle" limitation but from the lack of causal connection between the incident and the maintenance or use of the motor vehicle.

Ronca, Sloan and Mundy, *Pennsylvania Motor Vehicle Insurance, An Analysis of the Financial Responsibility Law*, § 3.5(a) (1986) (footnotes omitted). We are completely in accord with the foregoing analysis. We see nothing in the Financial Responsibility Law that would lead us to conclude that the traditional requirement of some causal connection between use of the vehicle and the injuries has been eliminated. As to the specific change eliminating the use "as a vehicle" requirement, it is beyond peradventure that this change is irrelevant here since in this case there is

no suggestion that the vehicle was being used as anything but a vehicle.

Since we find that our own law commands an affirmance of the trial court in this case, we are constrained not to consider appellants' citation of cases involving dog bites in motor vehicles from other jurisdictions. We note, however, that were we to consider such decisions, we would not choose to follow them. The cases cited (see citations, supra) are not in line with Pennsylvania law and are, in any event, distinguishable.[3] Additionally, we note that appellants have not chosen to cite other out-of-state precedent that supports our conclusion that the fact that a motor vehicle is the situs of a dog bite to a passenger in the car does not command the result that the resulting injuries arose from the use of the vehicle. *American States Insur. Co. v. Allstate Insur. Co.*, 484 So.2d 1363 (Fla.App.1986).

The order of the trial court is affirmed.

---

3. Both of the "dog bite" cases cited by appellants involved coverage disputes between the homeowner and automobile liability insurers of the owner of the motor vehicle and the dog. In both cases, the coverage issue centered on whether the owner had been negligent. Neither involved construction of the first party benefits section of a statute like the Financial Responsibility Law. Thus, the cited cases are not relevant to our construction of that law.