

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-1996

# US Underwriters Ins v. Liberty Mutl Ins Co

Precedential or Non-Precedential:

Docket 95-1558

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"US Underwriters Ins v. Liberty Mutl Ins Co" (1996). *1996 Decisions.* Paper 221.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/221

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1558


U.S. UNDERWRITERS INSURANCE CO.;
MARYLAND CASUALTY COMPANY

v.

LIBERTY MUTUAL INSURANCE COMPANY;
PERLOFF BROTHERS, INC. a/k/a
PERLOFF, INC.

                    Liberty Mutual Insurance Company
                    and their insured, Perloff
          Brothers, Inc.,
                         Appellants.


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 93-cv-05015)


Argued: February 5, 1996

Before: SLOVITER, Chief Judge, ROTH and SAROKIN,
                Circuit Judges

(Opinion Filed  March 22, 1996)


Bernard E. Jude Quinn, Esq. (Argued)
German, Gallagher & Murtagh
200 South Broad Street
5th Floor
Philadelphia, PA 19102
     Attorney for Appellee U. S. Underwriters Ins.

Christopher P. Seerveld, Esq. (Argued)
Post & Schell
1800 JFK Boulevard
19th Floor
Philadelphia, PA 19103
    Attorney for Appellee Maryland Casualty

Andrew B. Klaber, Esq. (Argued)
Weber, Goldstein, Greenberg & Gallagher
1811 Chestnut Street
6th Floor
Philadelphia, PA 19103
    Attorney for Appellants

OPINION OF THE COURT

ROTH, Circuit Judge:

In this diversity action, we must determine whether the Supreme Court of Pennsylvania would consider certain conduct as falling within the definition of "use or maintenance of a motor vehicle," as defined by the Pennsylvania Motor Vehicle Financial Responsibility Law's ban on subrogation for certain types of insurance benefits, 75 Pa.C.S.A. § 1720. We predict that the Supreme Court of Pennsylvania would conclude that a driver who slips on grease from a nearby kitchen when he steps on the ground while alighting from a car is not engaged in use or maintenance of a motor vehicle. We will therefore reverse the decision of the district court.

I.

2

The district court disposed of this case on motion for summary judgment. We have jurisdiction over the appeal from the district court's final order pursuant to 28 U.S.C. § 1291. Subject matter jurisdiction rests on 28 U.S.C. § 1332. We exercise plenary review over the district court's order, both as an appeal from grant of summary judgment, Petruzzi's IGA Supermarkets v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 554 (1993), and because the dispute requires only an interpretation of law, Matter of Resyn Corp., 945 F.2d 1279, 1280 (3d Cir. 1991).

## II.

The parties agree on the relevant facts. On November 27, 1987, Robert Hilpl parked his car in the parking lot of the St. Johns Neumann Nursing Home. Hilpl was employed as a bid manager for Perloff Brothers, Inc., and had arrived at the nursing home to meet with representatives of Woods Management Services, a company that operated the nursing home's kitchen. Woods Management was a prospective customer of Perloff Brothers, and Hilpl intended to present the Woods representatives with calendars, planning guides, and other business-related paperwork.

After parking his car and turning off the engine, Hilpl began to exit the vehicle. He placed his left foot on the ground and started to stand up, pushing off with his right foot from inside the vehicle. In the process, Hilpl slipped on a pool of grease or similar substance that had coated a section of the parking lot. He fell, striking his back on the sill of the car

3

door.  At oral argument, the parties appeared to concede that the grease emanated from the nursing home's kitchen.

Hilpl's employer, Perloff Brothers, accepted responsibility for the injury, treating it as a work-related incident covered by the Pennsylvania Workers' Compensation Act, 77 P.S. §§ 1-1602.  Liberty Mutual Insurance Company ("Liberty Mutual"), the workers' compensation carrier for Perloff, provided Hilpl with lost wage benefits and medical benefits.  As of June 30, 1993, benefits totaled $285,875.82.  At the time of oral argument, benefits exceeded $400,000.

In addition to receiving benefits, Hilpl brought a third party action in the Philadelphia Court of Common Pleas, seeking damages for the injuries he sustained in the accident.  Hilpl sued Woods Management, Neumann Nursing Home, and the nursing home's parent organization, the Archdiocese of Philadelphia.  Pursuant to 77 P.S. § 319, Liberty Mutual acquired a subrogation lien on the proceeds of this action by operation of law.

On June 30, 1993, the Common Pleas action was settled for $800,000.  As part of the settlement, U.S. Underwriters Insurance Co., the insurer of the nursing home, and Maryland Casualty Co., the insurer of Woods Management, (hereinafter, collectively, "the Tort Liability Insurers") agreed to assume responsibility for all amounts that had accrued on Liberty Mutual's subrogation lien on or before the settlement date.

On October 1, 1993, the Tort Liability Insurers filed a declaratory judgment action in the U.S. District Court for the

4

Eastern District of Pennsylvania seeking to invalidate the subrogation lien pursuant to 75 Pa.C.S.A. § 1720. Section 1720 bars a compensation insurer's right of subrogation to recover workers' compensation benefits from an insured's third–party tort recovery if the insured's injuries arose from the maintenance or use of a motor vehicle. The parties filed cross motions for summary judgment, and on June 8, 1995, the district court entered judgment for plaintiffs. Liberty Mutual appealed.

## III.

This controversy is easily located within the landscape of Pennsylvania law. It takes place at the intersection of the Pennsylvania Workers' Compensation Act, 77 P.C.S.A. §§ 1–1602, and the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701–1798. Hilpl and his injury are clearly subject to the provisions of Workers' Compensation Act. Section 319 of that act grants a workers' compensation insurer subrogation rights to an employee's recovery from a third party tortfeasor. Section 1720 of the Financial Responsibility Law limits that right, barring subrogation where an employee's injury arose out of the maintenance or use of a motor vehicle.[1]

---

[1] This section provides:

> **§ 1720. Subrogation**
> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits . . ..

Id.; <u>Walters v. Kamppi</u>, 545 A.2d 975 (Pa. Commw. 1988) (applying plain meaning of statute to bar subrogation), <u>appeal denied</u>, 544

5

The current dispute turns on the meaning of "maintenance or use of a motor vehicle" as defined by § 1720. The Tort Liability Insurers contend, and the district court agreed, that Hilpl's actions in exiting his car fell within the scope of maintenance or use.  Liberty Mutual argues otherwise, claiming that Hilpl's injury did not manifest the degree of causal connection to the vehicle required by the Pennsylvania courts.

The answer to this question is obviously controlled by state law.  We therefore begin with the relevant statute. Unfortunately, none of the terms in the phrase "arising out of the maintenance or use of a motor vehicle" are among those defined in 75 Pa.C.S.A. § 1702, the list of statutory definitions for the Financial Responsibility Law.  The terms are also absent from the general definition section for the Vehicle Code.  75 Pa.C.S.A. § 102.  There is therefore no controlling statutory provision for this case.[2]

---

A.2d 512 (Pa. 1989).  The Pennsylvania legislature subsequently repealed § 1720's prohibition with respect to worker's compensation benefits, leaving in place its bar on subrogation rights for other types of compensation.  Act of July 2, 1993, § 25(b), 1993 Pa. Laws 190-44.  Pennsylvania courts have interpreted this amendment as prospective only.  Fulmer v. Pennsylvania State Police, 647 A.2d 616 (Pa. Commw. 1994); Byard F. Brogan, Inc. v. W.C.A.B., 637 A.2d 689 (Pa. Commw. 1994); see also Carrick v. Zurich-American Ins. Group, 14 F.3d 907 (3d Cir. 1994) (predicting prospective application).

[2]  The Tort Liability Insurers correctly point out that Pennsylvania's Statutory Construction Act, 1 Pa.C.S.A. §1921(c)(5), advises that former law on the subject may be considered in ascertaining the legislature's intent when the words of a statute are not explicit.  For our purposes, however, we must first look to controlling state authority, and prior enactments are only persuasive, not binding.

Absent controlling statutory authority, we turn to the decisions of the highest state tribunal to answer a question of state law. The Pennsylvania Supreme Court, however, has not ruled on the terms of this provision.

When a state's highest court has not spoken on a subject, we must attempt to predict how that tribunal would rule. Kowalsky v. Long Beach Township, 72 F.3d 385, 387 (3d Cir. 1995). In making such determinations, we give due deference to the decisions of lower Pennsylvania courts. Winterburg v. Transp. Ins. Co., 72 F.3d 318, 322 (3d Cir. 1995). The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise. City of Philadelphia v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 123 (3d Cir. 1993); Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991). In the current case, existing decisions of Pennsylvania's intermediate appellate court provide ample guidance for us to resolve this dispute.

We begin with Lucas-Raso v. American Mfrs. Ins. Co., 657 A.2d 1 (Pa. Super. 1995), appeal denied, 668 A.2d 1119 (Pa. 1995), a recent case in which the meaning of "maintenance and use" under the Financial Responsibility Law was squarely before the Pennsylvania Superior Court. The court surveyed the relevant Pennsylvania case law, placing particular reliance on the adoption in Alvarino v. Allstate Ins. Co., 537 A.2d 18, 20 (Pa. Super. 1988), of an interpretation of "arising out of ownership, maintenance or use" announced by the Pennsylvania Supreme Court

7

in <u>Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.</u>, 170 A.2d 571 (Pa. 1961). In <u>Manufacturers</u>, the Supreme Court had held: "Arising out of 'means causally connected with, not proximately caused by.' 'But for' causation, i.e., a cause and result relationship is enough to satisfy this [requirement]." <u>Id.</u> at 573. <u>Alvarino</u> applied this definition to § 1720.

The <u>Lucas-Raso</u> court then stressed the importance of the causation element. First, the causation inquiry serves the legislature's purpose in passing motor vehicle insurance legislation, namely "to compensate losses directly resulting from motoring accidents and to leave injuries tangential to driving to other systems of compensation. <u>Id.</u> at 3 (citing <u>Prudential Property & Casualty Ins. Co. v. McDaniel</u>, 493 A.2d 731 (Pa. Super. 1985)). Even more importantly, causation ensures that injuries suffered by a victim arise from the use of the motor vehicle itself. <u>Id.</u> In other words, "[t]here must be a link between the injury and the motor vehicle before compensation will be awarded." <u>Id.</u> at 4.

The court next applied these principles to the facts of the case. In <u>Lucas-Raso</u>, the plaintiff had been injured when walking around the back of her car to reach the driver's side. The plaintiff alleged that despite her physical position outside the vehicle, she was nevertheless an occupant of the car. The court considered this claim, noting that "it is not disputed that 'maintenance and use' is presumed if occupancy can be shown." <u>Id.</u> The Superior Court ultimately ruled that she was not an occupant. More importantly for the current case, the court then made clear

8

that occupancy alone would not satisfy § 1720's requirement of maintenance and use.  As the court explained, "Even if we agreed that . . . [the victim] was an occupant, she must still prove the existence of a causal connection between the injuries sustained and the maintenance and use of the motor vehicle."  657 A.2d at 4.

We believe that Lucas-Raso accurately captures the state of Pennsylvania law on maintenance and use of a motor vehicle.  If nothing else, Lucas-Raso and the cases it surveys make clear that the crucial point for triggering § 1720's maintenance and use prohibition is a causal connection between vehicle and injury.  We therefore turn to that element.

In assessing whether the necessary causal nexus exists, we could--as the parties wish--struggle with the legal equivalent of angels and pinheads.  For example, the vehicle obviously was, in a sense, a cause of the accident:  Hilpl was alighting from the car when he fell; the car was a part of the stream of events that lead to his injury.  Viewing causation in these terms, however, makes it essentially all-encompassing:  If not for the unfortunate coincidence of a multitude of causes, Hilpl, his car, and a layer of grease might not have combined so painfully on that late November day.  This approach to causation would bring §1720 into play whenever an automobile was even tangentially related to an accident, since absent the car, the accident arguably might not have occurred.  This in turn would contravene the Pennsylvania Superior Court's repeated cautions that the Financial Responsibility Law was not intended to be a general

9

liability statute, but rather a system of compensation for "losses directly resulting from motoring accidents." 657 A.2d at 3. Nevertheless, so the counterargument goes, here the car was involved.

Fortunately, we can avoid this debate. It is a matter of hornbook tort law that every incidental factor that arguably contributes to an accident is not a "but for" cause in the legal sense. See Berry v. Borough of Sugar Notch, 43 A. 420 (Pa. 1899). Our survey of Pennsylvania cases demonstrates that the Commonwealth's understanding of "use of a motor vehicle" simply will not encompass the causal nexus at issue here. See Smith v. United Servs. Auto. Ass'n, 572 A.2d 785, 787 (Pa. Super. 1990) (rejecting claim that injury from hay thrown from hayride arose from maintenance or use of a motor vehicle), appeal dismissed, 601 A.2d 276 (Pa. 1991); Roach v. Port Auth. of Allegheny County, 550 A.2d 1346 (Pa. Super. 1988) (rejecting claim that bus passenger injured in fight between two other passengers arose out of maintenance or use of motor vehicle); Alvarino v. Allstate Ins. Co., 537 A.2d 18 (Pa. Super. 1988) (holding that injury to child bitten by dog while passenger in car did not arise from use of motor vehicle); Camacho v. Nationwide Ins. Co., 460 A.2d 353 (Pa. Super. 1983) (holding that injury to driver from explosive thrown into his car by passenger in passing automobile did not arise out of maintenance or use of vehicle), aff'd, 473 A.2d 1017 (Pa. 1984); Schweitzer v. Aetna Life & Cas. Co., 452 A.2d 735 (Pa. Super. 1982) (holding that injuries to woman, who was pushed into her automobile and beaten inside automobile by operator of

10

motorcycle, did not arise out of maintenance and use of motor vehicle); Erie Ins. Exchange v. Eisenhuth, 451 A.2d 1024 (Pa. Super. 1982) (rejecting claim that injuries to automobile passenger shot by police officer in pursuing vehicle arose out of maintenance or use of automobile); see also Pecorara v. Erie Ins. Exchange, 596 A.2d 237 (1991) (rejecting as absurd a literal interpretation of "used by any person . . . employed . . . in the automobile business" because such interpretation would prohibit "coverage for an accident . . . if [the owner] had lent his dump truck to a friend to haul lumber to a campsite, if that friend also happened to be an employee of an automobile business"); Ferry v. Protective Indem. Co., 38 A.2d 493 (Pa. Super. 1944) (refusing coverage for injury caused to pedestrian while truck driver was loading truck); cf. Walters v. Kamppi, 545 A.2d 975 (Pa. Commw. 1988) (finding requirements of § 1720 met where truck driver was injured in automobile accident caused by slippery substance on highway from allegedly negligent road maintenance), appeal denied, 554 A.2d 513 (Pa. 1989). We also note that the words "occupying, entering into, or alighting from a motor vehicle," which appeared in the definition of "use or maintenance" under the old Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.106 (repealed), were not included when the legislature replaced the No-Fault Act with the Financial Responsibility Law. We believe that this action shows a legislative intent consistent with the Pennsylvania Superior Court's understanding. Hilpl's activity does not fall within the

11

meaning of § 1720, as intended by the legislature and interpreted by the courts.

In concluding that there was no causal connection between Hilpl's alighting and his subsequent accident, we place particular reliance on the Superior Court of Pennsylvania's discussion in Ohio Casualty Group of Ins. Cos. v. Bakaric, 513 A.2d 462 (Pa. Super. 1986), appeal denied, 520 A.2d 1384 (Pa. 1987). In Bakaric, a husband injured his wife by shooting her in the face with a handgun. There was evidence that the discharge occurred as the husband forced his wife into the driver's seat of their automobile and then pushed her across the seat to the passenger's side. Id. at 463 n.1. The court refused to interpret the incident as resulting from the use of a motor vehicle "since it is not clear in this instance that entering or loading the vehicle caused the injuries." Id. at 465. The court then explained that:

> A lay person's consideration of this factual situation . . . would probably produce a conclusion that any damages awarded [the couple] would not result from the use of an automobile by them, but from the wanton use of a gun. We believe that the proper legal conclusion should be the same.

Id. at 466 (quoting slip op. of trial court).

The sentiments expressed in Bakaric convey our view of the present case. Pennsylvania law makes clear that "maintenance or use of a motor vehicle" requires causation. The court must determine the "instrumentality used to cause the injury." Spisak v. Nationwide Mut. Ins. Co., 478 A.2d 891, 893 (Pa. Super. 1984). A layman would understand that the instrumentality used to cause

12

the injury in the case at bar was the substance on the surface of the parking lot. The cause of Hilpl's injury was the fact that he slipped on grease, and all the clever arguments of skilled legal advocates cannot alter this central event. It was "mere fortuity" that Hilpl was still partially in his car when he slipped. <u>Pecorara</u>, 596 A.2d at 240. Causation, however, requires more than "mere happenstance." <u>Roach</u>, 550 A.2d at 1349.

IV.

We therefore conclude that the Supreme Court of Pennsylvania would hold that an individual who slips on grease from a nearby kitchen when he steps on the ground while alighting from his automobile has not been injured as a result of maintenance or use of a motor vehicle. Consequently, § 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law will not apply, and Liberty Mutual retains its subrogation lien. We will reverse the decision of the district court.

U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.

No. 95-1558

SLOVITER, Chief Judge, Dissenting.

The issue is whether the Supreme Court of Pennsylvania, which had a long
of protecting the recovery of damages for injuries incurred by the drivers and occu
of automobiles, would have permitted the workers' compensation carrier in this case
subrogated to the recovery received by the driver.  At the time of the accident in
question, the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 E
Cons. Stat. Ann. § 1720, explicitly barred a workers' compensation carrier from
subrogation for benefits paid if the injuries arose "out of the maintenance or use
motor vehicle."  See 75 Pa. Cons. Stat. Ann. § 1720 (1984).  The driver in this cas
Robert Hilpl, was injured while alighting from the vehicle when he slipped and inju
himself by landing on the vehicle.  I believe that under these facts the Supreme Co
Pennsylvania would have held that Hilpl was engaged in the "use" of that vehicle.

The MVFRL replaced the Pennsylvania No-fault Motor Vehicle Insurance Act,
Stat. Ann. § 1009.101-1009.701 (repealed effective Oct. 1, 1984), which had defined
"maintenance or use of a vehicle" as "maintenance or use of a motor vehicle as a ve
including, incident to its maintenance or use as a vehicle, occupying, entering int
alighting from it." (Emphasis added).  The MVFRL continues to use the phrase "maint
or use" but does not define it.  Thus, the strongest argument for the majority's po
is that there is no longer language explicitly covering alighting from a vehicle in
new law's reference to the "maintenance or use" of the vehicle.

However, there is no legislative history to indicate that by enacting the
the Pennsylvania legislature intended to exclude accidents occurring when a person

2

vehicle. Moreover, Pennsylvania's Statutory Construction Act, 1 Pa. Cons. Stat. Ann

1921(c)(5), provides that it is appropriate to consider former law where legislativ

intent is unclear.  Significantly, Pennsylvania intermediate courts have looked to

statutes and case law interpreting these statutes to determine whether an injury "a

out of the maintenance or use of a motor vehicle."  See, e.g., Alvarino v. Allstate

Co., 537 A.2d 18 (Pa. Super. Ct. 1988) (analyzing prior statute and case law to det

that dog bite did not arise out of use of motor vehicle); Roach v. Port Authority o

Allegheny County, 550 A.2d 1346 (Pa. Super. Ct. 1988) (analyzing prior statute and

law to determine that injury resulting from fight on bus did not arise out of use o

vehicle).

In a recent Pennsylvania Superior Court case, the court reaffirmed that

"maintenance or use" of a vehicle is presumed if the injured party is an "occupant"

vehicle at the time of the accident.  Lucas-Raso v. American Manufacturers Ins. Co.

A.2d 1, 4 (Pa. Super. Ct. 1995).  I do not understand the majority to dispute that

was an "occupant" of his car at the time of the accident.  See Tyler v. Insurance C

N. Am., 457 A.2d 95, 97 (Pa. Super. Ct. 1983) (person alighting from vehicle still

occupant); Frain v. Keystone Ins. Co., 640 A.2d 1352, 1357 (Pa. Super. Ct. 1994) (e

vehicle is transaction essential to its use).  It follows that Hilpl was "using" hi

vehicle when he was injured.

In Lucas-Raso, upon which the majority relies, the court found no "use" b

case is distinguishable.  When the plaintiff fell in a parking lot it was not while

was alighting but while she was walking around her car with the intent of entering

She did not come into any contact with the vehicle in the course of her fall, and i

indeed stretch "maintenance or use" language to encompass "intended use."  In contr

this case Hilpl had never completely disengaged from his use of the car.

Hilpl described his position at the time of the accident in the following

picturesque manner:

3

Q. Where was your weight? Was your weight on your feet at that poi[nt]
you rose from the seat?

A. No. My weight was still on -- my butt was still, like, in the [car]
my feet went out from under me. You know, if you could only pictur[e]
know, you're getting out of the car and getting out of it front ways
you have all of this and you're inching out and your feet go out fr[om]
underneath of you, like that (Witness indicating), and then you come
and boom.

Q. So when your back hit the rocker panel -- what you mean by the r[ocker]
panel, I'll call the --

A. Where the door closes.

Q. The threshold of the door?

A. Yes.

Q. The bottom part that's parallel to the ground?

A. No, the top part.

Q. Well --

A. Where the door closes. Where that silver thing is.

Q. Okay. Where the floor ends and the door part begins.

A. Yes.

Q. Okay. Now, when you came down, did you come down on to that roc[ker]
panel, that silver part you just mentioned?

A. Yes. That's solid iron. That's only a silver plate over that.

Q. And that silver plate is still within the car; correct?

A. Oh, yes.

Q. And, so, your back hit that portion still within the car?

A. Yes.

Q. After your back hit that portion, what did your body do?

A. I slid down on the ground.

App. at 194.

4

The majority appears to base its decision that Hilpl was not "using" his

when he was in the process of alighting from it and injured himself on the car's ro

panel on the fact that the car didn't cause the injury.  While it may be true that

ultimate cause of Hilpl's injury was the grease left on the parking lot which he ca

contact with, there seems to be no dispute that his injuries resulted from his phys

contact with a portion of the car as he was exiting from it.

The majority concedes that under Pennsylvania law the causal connection r

is not proximate cause; "but for" causation is sufficient.  See Alvarino, 537 A.2d

21 ("but for" causation is sufficient as long as there is connection greater than n

happenstance between injuries sustained and insured vehicle).  That "but for" causa

evident in this case.  But for the manner in which Mr. Hilpl exited his car, and bu

the fact that he landed on the rocker panel of his car, this accident would not hav

happened.  Thus, Mr. Hilpl's accident and injuries were directly related to his use

car.  It is not helpful to speculate whether a different accident might have happen

he slipped on a slippery substance elsewhere in the parking lot.      Thus, I belie

Pennsylvania courts would hold that Hilpl was vehicle oriented, because he was stil

partially in the car, the keys remained in the ignition and he was "inching out."

I would therefore affirm the decision of the district court.