**Vereen v. Acme Markets Inc.**

C.P. of Montgomery County. no 92-15619.

*Marshall L. Grabois*, for appellants Johnie Vereen and Freda Vereen.

*Christopher M. Tretta*, for Acme Markets Inc. and American Stores Company.

*W. Bourne Ruthrauff*, for Yale Materials Handling Corporation, Heyster-Yale Material Handling and Richard Knowlton.

*Ronald H. Sherr*, for Magic Maintenance Inc.

472

*Regina M. McIlvaine*, for Tri-State Service Company Inc.

William C. Foster, for Continental Baking Company.

*Nataly A. Harker*, for appellee Constitution State Services Company.

FURBER, *J.*, May 22, 1997—Appellants Johnie Vereen and Freda Vereen, husband and wife, appeal this court's order of January 3, 1997, which denied their petition to strike the subrogation lien of Continental Baking Company.

## FACTS AND PROCEDURAL HISTORY

Johnie Vereen filed a premises and products liability complaint against all of the above-named defendants on February 23, 1993, as a result of work-related personal injuries he suffered on July 31, 1990. On that date, appellant was acting within the course and scope of his employment with Continental Baking Company as a driver/salesman delivering bread products to Acme Market. While standing on a loading dock and preparing to transfer bread from his truck to an iron bread rack on the dock, appellant was struck in the back by the bread rack, which was set in motion when struck by a Yale forklift, driven by Richard Knowlton, an Acme employee.

Appellant's complaint alleged the following: the negligence and carelessness of Knowlton as the forklift driver; the negligence of Acme Markets and American Stores Company as Knowlton's principals, and as owners of both the premises and the forklift; the negligence of, and breach of warranty by, Yale, Dougherty, Hyster, and NACCO, who collectively designed, manufactured, assembled, tested, distributed and sold the forklift; and, the negligence of Magic and Tri-State for failure to

inspect, maintain or service the forklift. Appellant settled his third-party premises and products liability claims against all the above-named tort-feasors in 1995, for the sum of $275,500.

Constitution State Services Company, "appellee," is the third-party administrator for workers' compensation claims of Continental Baking Company employees. Pursuant to the Pennsylvania Workers' Compensation Act,[1] appellee has paid to, or on behalf of, the appellant a total of $117,379.85 in wage loss benefits and $19,183.27 in medical benefits from July 31, 1990 to December 21, 1995. Since December 21, 1995, appellee has continued to make apportioned payments to the appellant and his medical providers pursuant to the Act.

On January 21, 1992, appellee filed a petition to terminate compensation benefits with the Workers' Compensation Board, which petition also sought credit or reimbursement for overpayment, alleging that the appellant was fully recovered from his injuries and had returned to work as of December 9, 1991. Appellee amended its filing to include a petition to review compensation benefits asserting its absolute right of subrogation pursuant to the Pennsylvania Workers' Compensation Act §319, against any third-party recovery appellant received.

Notwithstanding the open status of the legal issues before the Workers' Compensation Board, including the validity of Constitution State Services Company's subrogation lien, appellant filed a petition to strike the subrogation lien of Continental Baking Company with the Montgomery County Court of Common Pleas on January 3, 1996. This court's ultimate denial of that

---

1. 77 P.S. §§ 1-1602.

petition on January 3, 1997, forms the basis of Mr. Vereen's appeal.[2]

## ISSUES

Appellant Johnie Vereen sets forth two issues in his concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b):

(1) Whether the court erred by concluding that Mr. Vereen's injury did not arise out of the maintenance or use of a motor vehicle, thus allowing his employer's insurance carrier a right of subrogation against any third-party recovery; and,

(2) Whether the court appropriately considered section 1720 of the Motor Vehicle Financial Responsibility Law as it was written at the time of appellant's injury, prior to that section's partial repeal, and not as it is currently worded.

## DISCUSSION

*Issue I: Appellant's Injury Did Not Arise Out of the Maintenance or Use of a Motor Vehicle and, Thus, the Appellee Has an Absolute Right of Subrogation Against Any Third-Party Recovery*

The resolution of Mr. Vereen's claim can be reached only after an analysis of the interaction between the

---

2. We note with approval that on January 6, 1997, the Honorable Lloyd P. Nyce of the Workers' Compensation Bureau ruled in favor of Constitution State Services Company and the Continental Baking Company by granting both their benefits termination petition and compensation review petition, and ordered that the employer and/or insurance carrier would have a subrogation lien against Mr. Vereen's third-party recovery, in accordance with the Pennsylvania Workers' Compensation Act §319. Mr. Vereen filed an appeal of Judge Nyce's ruling on February 13, 1997, docketed at A97-0662.

Pennsylvania Workers' Compensation Act and the Pennsylvania Motor Vehicle Financial Responsibility Law.[3] Section 319 of the Workers' Compensation Act reads in pertinent part:

"Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article[4] by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employee, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer or account of any future installments of compensation." 77 P.S. §671. (Act of June 2, 1915, P.L. 736, art. III, §319, *as amended,* May 18, 1945, P.L. 671, §1.)

Section 1720[5] of the Pennsylvania Motor Vehicle Financial Responsibility Law as written at the time of appellant's injuries, read in pertinent part:

---

3. 75 Pa. C.S. §§1701-1798.

4. 77 P.S. §411 et seq. Liability and Compensation.

5. 75 Pa.C.S. §1720, *partially repealed,* by section 25(b) of Act 44 of 1993. The repealed section eliminates language relating to

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits . . . ." 75 Pa.C.S. §1720.

Appellant's assertion that his injuries arose from the maintenance or use of his delivery truck would defeat Constitution State Services Company's right of subrogation to Mr. Vereen's third-party settlement recovery pursuant to section 319 of the Workers' Compensation Act. *Borough of Norristown v. W.C.A.B. (Currier),* 137 Pa. Commw. 34, 585 A.2d 547 (1990).

Unfortunately, none of the terms contained in the phrase "arising out of the maintenance or use" of a motor vehicle are found within the definition sections of the Pennsylvania Motor Vehicle Code.[6] However, the courts of this Commonwealth have utilized the verbal analysis of the Pennsylvania Supreme Court to interpret that phrase, citing language from the court's ruling in *Manufacturer's Casualty Insurance Company v. Goodville Mutual Casualty Company,* 403 Pa. 603, 170 A.2d 571 (1961), decided prior to Pennsylvania's former No-Fault Motor Vehicle Insurance Act. In interpreting the terms of a motor vehicle insurance policy, the *Manufacturer's Casualty* court reasoned that "[c]onstrued strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by. 'But for' causation, *i.e.,* a cause and result relationship, is enough to satisfy this provision of the policy." *Id.* at 607-608, 170 A.2d at 573. Thus, it was the causal con-

workers' compensation payments or other benefits under the Workers' Compensation Act.

6. 75 Pa.C.S. §102, contains the general definition section of the Motor Vehicle Code. 75 Pa.C.S. §1702, contains the statutory definitions for the Financial Responsibility Law.

nection between a victim's injuries and his maintenance or use of a motor vehicle that provided the requisite link prior to the Pennsylvania No-Fault Motor Vehicle Insurance Act.[7]

Analyzing the legislative intent in the enactment of the No-Fault Act, the Superior Court stated that 40 P.S. §1009.102(b) clearly articulated the Act's purpose: "Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for *motor vehicle accident victims* and the survivors of deceased victims." *Camacho v. Nationwide Insurance Company,* 314 Pa. Super. 21, 23, 460 A.2d 353, 354 (1983), *affirmed,* 504 Pa. 351, 473 A.2d 1017 (1984). (emphasis in original) The *Camacho* court further noted that section 1009.103 defined a "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle," and that "maintenance or use of a motor vehicle" means "maintenance or use of motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it." *Id.* Hence, the court found that the driver of a vehicle who sustained injuries to his hand from an exploding bottle thrown into the car, while he was seated in it, did not arise out of the use of that motor vehicle.[8] The threshold determination for

7. Act of July 19, 1974, P.L. 489, no. 176, article I, section 101 et seq.; 40 P.S. §1009.101 et seq. (repealed, effective October 1, 1984).

8. See also, *Schweitzer v. Aetna Life and Casualty Company,* 306 Pa. Super. 300, 452 A.2d 735 (1982) (injuries suffered by car owner who was beaten while in the vehicle did not arise from the use or maintenance of a motor vehicle as a motor vehicle); *Erie Insurance Exchange v. Eisenhuth,* 305 Pa. Super. 571, 451 A.2d 1024 (1982)

coverage in such cases is a finding that the facts indicate a causal connection that is more than incidental, between the injuries suffered and the use of the motor vehicle. In addition, interpretation of the specific language of the No-Fault Act required finding that the injury was the result of the maintenance or use of the motor vehicle *as a motor vehicle.*[9]

Notably absent from the Commonwealth's most recent motor vehicle statutory enactment—the MVFRL —is any language denoting that the motor vehicle must be in use as a motor vehicle in order for the injury to be covered. Nonetheless, the Superior Court has consistently determined that the causal connection requirement, as previously interpreted under the prior No-Fault Act, be met in order for coverage to be provided. Hence, when a child who was riding in a van was bitten by a dog, the court found no causal connection between the use of the motor vehicle and the injuries suffered, affirming judgment on the pleadings in favor of the insurance company in *Alvarino v. Allstate Insurance Company,* 370 Pa. Super. 563, 537 A.2d 18 (1988). Writing for the court, the Honorable Phyllis Beck reasoned that there was not "any more than a merely incidental involvement of a motor vehicle in the situation that gave rise to [the child's] injuries," and concluded that "the mere fact that a motor vehicle is the place

---

(injuries sustained by passenger who was shot by policeman during car chase were not caused by car's use).

9. The Pennsylvania Supreme Court subsequently held that "use" must further be evidenced by an element of rational purpose; hence, a toddler's setting a car in motion did not rise to the "use" level necessary for No-Fault coverage, since "the alleged 'user' should at least know and understand the uses to which an automobile, as an automobile, may be put." *Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 582, 533 A.2d 1363, 1368 (1987).

where injuries are sustained is insufficient to establish a causal connection between the use of the vehicle and the injuries." *Id.* at 568, 537 A.2d at 21. Judge Beck extended this analysis when discussing the additional first-party insurance benefits claims of mental distress alleged by the child's father, who had also filed for coverage under his motor vehicle insurance policy: "Indeed, as to appellant Gabriel Alvarino, the connection of the vehicle to the injuries allegedly sustained is even more remote than it is to appellant Robbie Alvarino. While Robbie was in the vehicle, his father Gabriel was not." *Id.*

Finally, Judge Beck considered whether the absence of the "use as a motor vehicle" language in the MVFRL was an indication from the legislature that the current law was meant to be more liberally construed in the factual setting of *Alvarino* than would have previously been allowed under the No-Fault Act. The court ruled that the elimination of that term would not affect its decision, and quoted the following analysis from a treatise on the MVFRL:

"Under the No-Fault Act, the courts found no coverage where the injury had no connection with the use of the vehicle. For example, in *Howe v. Harleysville Insurance Co.,* [313 Pa. Super. 65, 459 A.2d 412 (1983)] the Superior Court determined that an occupant of a motor vehicle who suffered a gunshot wound in the vehicle could not receive benefits. Denial of coverage under these circumstances should continue under the Financial Responsibility Law, since the rationale for these decisions does not arise from the 'as a vehicle' limitation but from the lack of causal connection between the incident and the maintenance or use of the motor vehicle.

"Ronca, Sloan and Mundy, *Pennsylvania Motor Vehicle Insurance An Analysis of the Financial Responsibility Law, §3.5(a)(1986). (footnotes omitted)" Id.* at 569, 537 A.2d at 21-22.

The Superior Court has recently interpreted the phrase "maintenance or use" under the MVFRL in conjunction with the term "occupancy," and the manner in which non-occupancy affects the requisite causal connection between the motor vehicle and the victim's injuries in *Lucas-Raso v. American Manufacturers Insurance Company,* 441 Pa. Super. 161, 657 A.2d 1 (1995). Ms. Lucas-Raso had unlocked the passenger door of her car for a co-worker and "began to walk towards the rear of the vehicle with the intention of walking around the car and to the driver's side door where she intended to enter it in order to drive to the bank" with the company deposit bag of her employer. *Id.* at 164, 657 A.2d at 2. As she was walking toward the rear of the vehicle, Ms. Lucas-Raso stepped into a hole in her employer's snow-covered parking lot. The victim thereafter received approximately $35,000 in workers' compensation benefits, and American Manufacturers Insurance Company asserted a subrogation claim against any potential third-party recovery. In affirming the trial court's determination that, since no causal connection existed between Lucas-Raso's injuries and her use of the vehicle, the insurance carrier was not precluded by section 1720 of the MVFRL from asserting its lien, the Superior Court enumerated the criteria necessary for a person to be deemed an "occupant" of a motor vehicle:

"(1) [T]here is a causal relation or connection between the injury and the use of the insured vehicle;

"(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured ve-

hicle, although the person need not actually be touching it;

"(3) the person must be vehicle-oriented rather than highway or sidewalk-oriented at the time;

"(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." *Id.* at 166-67, 657 A.2d at 3, citing as authority, *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 336, 473 A.2d 1005, 1009 (1984). The *Lucas-Raso* court reasoned that when ruling on factual issues of causation, "the legislature intended to compensate losses directly resulting from motoring accidents and to leave injuries tangential to driving to other systems of compensation." *Id.* at 167, 657 A.2d at 3. While agreeing with the victim's contention that maintenance and use is presumed if occupancy can be shown, the court found that she was not an occupant of her vehicle because she was merely walking toward the car, had not entered and then exited it, had not opened her door, and had not started the engine. Further, Lucas-Raso could demonstrate no causal connection between her injuries and the maintenance and use of her car. The motor vehicle did not, in any way, contribute to her fall. Thus, the court concluded that although Lucas-Raso "was vehicle-oriented at the time of her fall, she has failed to establish the necessary nexus between her injury and the use of the insured vehicle." *Id.* at 170, 657 A.2d at 5.

The United States Third Circuit Court of Appeals has recently adopted the rationale of the *Lucas-Raso* court as an authoritative interpretation of Pennsylvania state law in *U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Company,* 80 F.3d 90 (3d Cir. 1996). The facts of *U.S. Underwriters* are undisputed: Robert Hilpl was injured, in the course and scope of his em-

ployment, in the process of exiting his vehicle. After parking the car and turning off the engine, Hilpl opened the door, placed his left foot on the ground, and pushed off with his right foot which was still inside the vehicle. While in the process of alighting, the victim slipped on a grease-like substance and fell, striking his back on the car door's sill. In addition to receiving workers' compensation benefits, Hilpl settled his third-party claims for $800,000. Liberty Mutual's claim of subrogation pursuant to section 319 of the Workers' Compensation Act was denied by the United States District Court for the Eastern District of Pennsylvania. In reversing that decision, the Third Circuit noted that since no statutory definition existed for the terms "arising out of the maintenance or use of a motor vehicle," and the Supreme Court of Pennsylvania had not previously ruled on the meaning of that phrase, it would attempt to predict how the Supreme Court would rule by beginning its analysis with the *Lucas-Raso* determination that causal connection between the injury and the motor vehicle is the sine qua non for allowing application of the maintenance and use subrogation prohibition in section 1720 of the MVFRL. The Third Circuit clearly articulated the causal connection prerequisite:

"In assessing whether the necessary causal nexus exists, we could—as the parties wish—struggle with the legal equivalent of angels and pinheads. For example, the vehicle obviously was, in a sense, a cause of the accident: Hilpl was alighting from the car when he fell; the car was a part of the stream of events that led to his injury. Viewing causation in these terms, however, makes it essentially all-encompassing: If not for the unfortunate coincidence of a multitude of causes, Hilpl, his car, and layer of grease might not have com-

bined so painfully on that late November day. This approach to causation would bring section 1720 into play whenever an automobile was even tangentially related to an accident, since absent the car, the accident arguably might not have occurred. This in turn would contravene the Pennsylvania Superior Court's repeated cautions that the Financial Responsibility Law was not intended to be a general liability statute, but rather a system of compensation for 'losses directly resulting from motoring accidents.' 657 A.2d at 3." *U.S. Underwriters, supra,* 80 F.3d at 94.

The court then reasoned that basic, time-tested, tort law could be utilized to clarify the dilemma since "every incidental factor that arguably contributes to an accident is not a 'but for' cause in the legal sense." *Id.* (citations omitted) Finally, the court found that since the instrumentality used to cause the injury was the grease on the parking lot and not the victim's car, "[i]t was 'mere fortuity' that Hilpl was still partially in his car when he slipped," but "[c]ausation, however, requires more than 'mere happenstance.'" *Id.* at 95. (citations omitted).

The final factual component to be considered when analyzing a causal nexus is the factual situation in which the victim is loading or unloading a motor vehicle at the time of injury. In denying a victim's claim for first-party medical benefits, the Superior Court of Pennsylvania has most recently ruled that, absent a showing of causal connection between the injuries and the vehicle, since the activity of loading was not a transaction essential to the use of the vehicle, the victim was not an "occupant" in *Huber v. Erie Insurance Exchange,* 402 Pa. Super. 443, 587 A.2d 333 (1991). In discussing what the legislature intended by omitting the loading/unloading language from the MVFRL that had pre-

viously been included in the No-Fault Act, the *Huber* court concluded that analyzing both "maintenance and use" and "occupying" was necessary to determine whether a victim's injuries are compensable. *Id.* at 445-46, 587 A.2d at 334. The court noted that prior Commonwealth decisions relied upon other language in the No-Fault Act to interpret the MVFRL, and specifically found that section 1009.103 of the No-Fault Act stated that the causal connection in loading/unloading a vehicle was referred to as occupying, entering into, or alighting from the vehicle. Thus, the Superior Court had previously ruled that injuries sustained by an insured who was standing behind his car unloading a boat from the roof were not compensable because the victim was not occupying, entering into, or alighting from the vehicle in *Dull v. Employers Mutual Casualty Company,* 278 Pa. Super. 569, 420 A.2d 688 (1980). Likewise, the court found no causal connection when a victim was injured while standing at the back of a tractor-trailer, with one foot on the doorjamb of the trailer and the other foot on the ramp leading to the trailer, in *Martin v. Recker,* 380 Pa. Super. 527, 552 A.2d 668 (1988).[10]

Applying the legal principles established by the courts above-cited to the specific factual events which occurred at the time of Mr. Vereen's injuries leads this court

10. The *Martin* court quoted with approval, language from *Cerrato v. Holy Redeemer Hospital,* 342 Pa. Super. 551, 554, 493 A.2d 728, 729 (1985): "the [No-Fault] Act defines the extent of an insured's coverage in terms of the period during which he is in physical contact with a motor vehicle, that is, his entrance into, occupation of, and exit from it. . . . The legislature has also mandated, however, that insurance coverage *not* extend to a separate act, that of 'loading or unloading a motor vehicle.'" *Martin, supra* at 543-44, 552 A.2d at 676. (emphasis in original)

to the conclusion that those injuries did not arise from the maintenance or use of the appellant's delivery truck, and will not, therefore, defeat Constitution State Services Company's valid and absolute right of subrogation under section 319 of the Pennsylvania Workers' Compensation Act. The cervical and lumbosacral strains to appellant's back have not ever been disputed as being work-related injuries. It is apparent from the wording of the appellant's complaint, his own testimony, and an understanding of the applicable law that those injuries did not occur as a result of the maintenance or use of a motor vehicle, because he was not occupying, entering into, or alighting from his truck when he was struck by the iron bread rack.

Appellant's third-party complaint mentions neither his use or maintenance of, nor his proximity to, a motor vehicle at the time of his injury. In fact, paragraph 13 of the complaint states that "This accident resulted solely from the negligence and recklessness of the defendant or defendants herein and was due in no manner whatsoever to any act or failure to act on the part of the plaintiff." The causes of action pleaded within the complaint assert negligence, breach of duty, and breach of warranty. At no time does the appellant plead that his injuries were caused by his use or maintenance of a motor vehicle. In addition, testimony offered at both the workers' compensation hearings and in this third-party action establish that the instrumentalities responsible for causing appellant's injuries were the forklift and the iron bread rack.

The appellee's response brief of June 7, 1996 to the appellant's petition to strike the subrogation lien provides numerous excerpts from deposition testimony taken both during the course of discovery and from the workers' compensation hearings held in this matter.

All "answers" are the responses of Johnie Vereen, the appellant herein:

"Q. Exactly what were your body movements at exactly the time that the accident happened, what were you doing?

"A. I was pulling a tray off the truck.

"Q. And did you tell me before where your feet were situated at the *(sic)* point?

"A. On the dock.

"Q. And where was your face looking, where?

"A. The back of the truck, into the back of my truck.

"Q. So your back was—

"A. To the rack.

"Q. Where were your hands?

"A. On the tray.

"Q. And so at this particular moment, it wasn't necessary for you to go below and have your feet on the bumper; is that correct?

"A. Right. If I had them there, I wouldn't have been here." (Brief at 3-4, citing Workers' Compensation Hearing N.T. 10/04/93 at 191-92.)

"Q. You said your hands were on the tray, you were facing the back of your truck and your feet were on the dock?

"A. Yes.

"Q. Were you completely turned toward the back of your truck?

"A. Yes . . . I was—I had my back to the rack and I was coming out. I had cleared the back of my truck with the tray, and then boom, that's about the only thing I remember." (Brief at 4, citing N.T. 10/04/93 at 194.)

"Q. Tell the referee exactly where you were with relation to the—to the vehicle, and what you were doing when the accident happened.

"A. Okay. I was unloading my vehicle. I had my back—my face was facing the rear of my vehicle as I backed into the bay area. And as I was unloading, I had unloaded—half of the rack was full at that time, so I had been there approximately a half an hour. So, as I was unloading, I had my back turned to the rack, and then the guy unloading the truck beside me with a forklift, ran into me. He ran into the rack, ran the rack into the back of me.

"Q. Just so the referee is clear, the forklift did not hit you, it was the rack that hit you; is that correct?

"A. Right, the forklift hit my big rack, knocked my rack into me, and my rack knocked me back into the truck." (Brief, exhibit "C," citing N.T. 04/04/95 at 15.)

"Q. And when you were—when you stopped moving, what was your position?

"A. I was leaning, maybe, in approximately, maybe about a forty, or forty-five degree angle, I would guess. I would imagine. With my feet up on the dock, and my body leaning over into the truck." (*Id.* at 17.)

Appellant's own words describe his relationship to his delivery truck, which is the motor vehicle in question. Both feet were "on the dock," he was facing "the back of the truck," his back was "to the rack," his hands were "on the tray," and he had "cleared the back of (his) truck with the tray." Mr. Vereen cannot "explain away" the absence of causal nexus between his use of the delivery truck and his back injuries as required by the Pennsylvania Supreme Court's decision in *Manufacturer's Casualty, supra.* Nor would this particular accident have been compensable under Pennsylvania's

No-Fault Act, since Mr. Vereen was not a "victim" suffering injuries arising out of the maintenance or use of the delivery truck as a vehicle, as he was not occupying, entering into it, or alighting from it, as articulated in *Camacho, supra.* When applying the *Lucas-Raso* court's analysis under the current MVFRL, it is equally apparent that the appellant was not "occupying" the delivery truck when the forklift propelled the iron bread rack into his back. We find that there was no causal connection between appellant's injuries and the use of the delivery truck and that the appellant was not engaged in a transaction essential to the use of the motor vehicle when he was injured. Mr. Vereen's injuries are precisely those which would be deemed tangential to driving and which losses should be, and were, compensated by the Workers' Compensation Act rather than the MVFRL. The appellant was also not an occupant by virtue of his having previously unloaded bread from his truck under the holdings in *Huber, Dull,* and *Martin, supra.* He was injured as the result of a force external to any use at all of the delivery truck—a forklift careening into an iron bread rack.

Mr. Vereen would have this court rely upon the facts underlying the Superior Court's loading/unloading analysis in *Omodio v. Aetna Life and Casualty,* 384 Pa. Super. 544, 559 A.2d 570 (1989). The *Omodio* court ruled invalid an insurance policy provision excluding coverage for any injury sustained as the direct result of loading or unloading a vehicle, thus allowing Mr. Omodio to recover excess wage loss benefits from his work-related injury. The court reasoned that "[a]lthough Omodio sustained injury while loading his vehicle, he was occupying the vehicle at the time and therefore would have been entitled to recover if his suit had been brought under the No-Fault Act." *Id.*

at 547, 559 A.2d at 571. This ruling is completely consistent with both our holding and also later Superior Court cases since both parties in *Omodio* had stipulated to the fact that the victim therein had been, in fact, standing inside the vehicle at the time of his injury, and the MVFRL intended coverage for victims who are occupying their vehicle at the time of their accident. Thus, the court found valid an automobile insurance clause excluding first-party benefits for injuries sustained while a victim was loading or unloading the vehicle, *except* those injuries sustained while concurrently occupying the vehicle, in *Huber, supra.* The court denied coverage when a victim's injuries were sustained while she was standing outside her vehicle, although she was attempting to unload gasoline cans from her car, in *Dorohovich v. West American Insurance Company,* 403 Pa. Super. 412, 589 A.2d 252 (1991). The court found that Mrs. Dorohovich's injuries were sustained as she was sprayed with gasoline by a station attendant, thus there was no causal connection between her vehicle and the instrumentality causing her injuries.

It is clear from a review of the cases and an analysis of the statutory language of prior Commonwealth motor vehicle acts, as well as the current MVFRL, that Mr. Vereen's injuries did not arise out of the maintenance or use of his bread truck. He was not occupying the vehicle at the time the forklift caused a bread rack to hit his back; in fact, appellant's direct testimony states that both of his feet were on the loading deck, his hands were on the tray, and he was not in any way connected to the vehicle. The instrumentality that caused his injury was a bread rack propelled forward by a forklift. Appellant's injuries are not those which the legislature intended to compensate as the result of a motoring accident. Appellant's injuries are those which

the legislature intended be compensated under the Workers' Compensation Act, and for which there is an absolute right of subrogation by the employer's insurance carrier against any third-party benefits recovery.

We find no merit to appellant's claim herein, and find that since Mr. Vereen's injuries did not arise out of the maintenance or use of a motor vehicle, Constitution State Services Company is entitled to recover its statutory lien pursuant to section 319 of the Pennsylvania Workers' Compensation Act.[11]

*Issue II: The Court Properly Applied Section 1720 of the MVFRL As It Was Written at the Time of Appellant's Injury*

Appellant's second issue alleges that this court inappropriately applied section 1720 of the MVFRL. Such is not the case. Section 25(b) of Act 1993, July 2, P.L. 190, no. 44, repealed section 1720 insofar as it relates to workers' compensation benefits or payments; thus, under the present section 1720, appellee would

---

11. We note with approval similar findings and conclusions contained within the Bureau of Workers' Compensation decision rendered by Judge Nyce on January 6, 1997: "Finding of fact number 44. The judge credits the testimony of claimant (Mr. Johnie Vereen) regarding the mechanics of his work injury. In this regard, the judge finds that claimant's injury did not arise from the maintenance or use of a motor vehicle, and that claimant was neither occupying, entering into, or alighting from a motor vehicle at the time of his injury. Rather, claimant was injured from an instrumentality of external force other than the motor vehicle itself, namely, the forklift hitting the iron rack." And, "Conclusion of law number 4. Defendant has established that claimant's injury did not arise out of the maintenance or use of a motor vehicle and thus defendant is entitled to subrogation against any proceeds generated by claimant's third-party action to the extent of compensation benefits paid and payable under the Act."

enjoy an absolute right of subrogation to an insured's tort recovery regardless of the fact that the injury occurred as the result of the maintenance or use of a motor vehicle. If we had entertained such reasoning, we would not have deliberated at such length on Issue I, *supra.* Our holding is based upon the language of section 1720 that existed prior to its partial repeal, and necessitated our finding that Mr. Vereen's injuries did not arise out of the maintenance or use of his motor vehicle. It is unnecessary, therefore, to discuss appellant's theories concerning the retroactivity of statutory application.

For the reasons set forth above, the decision of the court denying the appellants' petition to strike the subrogation lien of Continental Baking Company should be affirmed.